Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2019 NOV -1 PM 1:44

# UNITED STATES DISTRICT COURT
### for the
### District of Colorado

JEFFREY P. COLWELL
CLERK

BY_____DEP. CLK

\_\_\_\_Civil\_\_\_\_ Division

Case No. _____

*(to be filled in by the Clerk's Office)*

Michael Francis Holowecki

*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

-v-

Metropolitan State University of Denver; Whitney Traylor, J.D., Associate Professor; Dave Haden, Assoc. Dean of Student Engagement and Wellness; Raul M. Sanchez, J.D., Exec. Dir., Office of Equal Opportunity

*Defendant(s)*
*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

## COMPLAINT AND REQUEST FOR INJUNCTION

I. **The Parties to This Complaint**

   A. **The Plaintiff(s)**

   Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

   | | |
   |---|---|
   | Name | Michael Francis Holowecki |
   | Street Address | PO Box 27672 |
   | City and County | Denver, Jefferson |
   | State and Zip Code | Colorado 80227 |
   | Telephone Number | 720-572-0296 |
   | E-mail Address | mholowecki@gmail.com |

   B. **The Defendant(s)**

   Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

Defendant No. 1

| | |
|---|---|
| Name | Metropolitan State University of Denver |
| Job or Title *(if known)* | |
| Street Address | 890 Auraria Parkway |
| City and County | Denver, Denver |
| State and Zip Code | Colorado 80204 |
| Telephone Number | 303-605-5469 |
| E-mail Address *(if known)* | |

Defendant No. 2

| | |
|---|---|
| Name | Whitney C Traylor, J.D. |
| Job or Title *(if known)* | Associate Professor |
| Street Address | Jordan Student Success Building 308 |
| City and County | Denver, Denver |
| State and Zip Code | Colorado 80204 |
| Telephone Number | 303-615-0125 |
| E-mail Address *(if known)* | traylorw@msudenver.edu |

Defendant No. 3

| | |
|---|---|
| Name | David Haden |
| Job or Title *(if known)* | Associate Dean of Student Engagement and Wellness |
| Street Address | Campus Box 74, P.O. Box 173362, Denver, CO |
| City and County | Denver, Denver |
| State and Zip Code | Colorado 80217-3362 |
| Telephone Number | 303.615.0220 |
| E-mail Address *(if known)* | dhaden@msudenver.edu |

Defendant No. 4

| | |
|---|---|
| Name | Raul M. Sanchez, J.D. |
| Job or Title *(if known)* | Executive Director, Office of Equal Opportunity |
| Street Address | Jordan Student Success Building 308 |
| City and County | Denver, Denver |
| State and Zip Code | Colorado 80204 |
| Telephone Number | 303-605-5469 |
| E-mail Address *(if known)* | rsanch64@msudenver.edu |

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

## II. Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

[✓] Federal question      [ ] Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A. If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

Due Process Clause
Americans with Disabilities Act
Rehabilitation Act of 1965

### B. If the Basis for Jurisdiction Is Diversity of Citizenship

1. The Plaintiff(s)

    a. If the plaintiff is an individual

    The plaintiff, *(name)* _____, is a citizen of the State of *(name)* _____.

    b. If the plaintiff is a corporation

    The plaintiff, *(name)* _____, is incorporated under the laws of the State of *(name)* _____, and has its principal place of business in the State of *(name)* _____.

    *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2. The Defendant(s)

    a. If the defendant is an individual

    The defendant, *(name)* _____, is a citizen of the State of *(name)* _____. Or is a citizen of *(foreign nation)* _____.

Page 3 of 6

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

    b.     If the defendant is a corporation

The defendant, *(name)* Metropolitan State University of Denver , is incorporated under the laws of the State of *(name)* Colorado , and has its principal place of business in the State of *(name)* Colorado .

Or is incorporated under the laws of *(foreign nation)* _____ ,

and has its principal place of business in *(name)* Denver, CO .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.     The Amount in Controversy

The amount in controversy—the amount the plaintiff claims the defendant owes or the amount at stake—is more than $75,000, not counting interest and costs of court, because *(explain)*:

SEE ATTACHMENT 1

### III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the injunction or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

    A.     Where did the events giving rise to your claim(s) occur?

The events were alleged to have occurred in several Metropolitan State University of Denver occupied buildings located on the Auraria Campus. Defendant identified a 'classroom' and 'MSU Administration Building'; other allegations failed to identify upon whom, how or where the Plaintiff is alleged to have committed the alleged offenses.

    B.     What date and approximate time did the events giving rise to your claim(s) occur?

Sept 24, 2018 9:45 am
Oct 17, 2018 12:15 pm
Nov 1, 2018 8:30 am

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

    C.    What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

    SEE ATTACHMENT 1

## IV. Irreparable Injury

Explain why monetary damages at a later time would not adequately compensate you for the injuries you sustained, are sustaining, or will sustain as a result of the events described above, or why such compensation could not be measured.

    SEE ATTACHMENT 1

## V. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

    SEE ATTACHMENT 1

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 11/01/2019

Signature of Plaintiff

Printed Name of Plaintiff   Michael Francis Holowecki

### B. For Attorneys

Date of signing:

Signature of Attorney
Printed Name of Attorney
Bar Number
Name of Law Firm
Street Address
State and Zip Code
Telephone Number
E-mail Address

3. The Amount in Controversy

The Plaintiff, having been meted out severe and excessive discipline, has been caused significant and potentially irreparable financial, mental and emotional harm that will require unknown time, money and effort to recover from the harm done by the forced removal from academic pursuits without regard to Due Process of Law. In addition to the burden imposed upon Plaintiff's mental and emotional well-being and the continuing need for additional professional mental health care, the irreparable damage to Defendant's reputation and integrity caused by this action, Plaintiff will be required to pursue educational goals elsewhere requiring Plaintiff to meet all unknown educational requirements to obtain their Bachelor's Degree from another university and must bear the full financial burden due to being barred from eligibility in the Federal Student Aid Program through this action, the costs of which are indeterminable at this time.

### III. Statement of Claim

C. What are the facts underlying your claim(s)?

A. That by his actions to report these baseless and materially misrepresentative allegations to the Office of the Dean of Student Engagement and Wellness, Professor Whitney Traylor immediately denied the student the 'Right to Due Process' as defined in the 'Student Code of Conduct' only after receiving email notification on Oct 22, 2018 at 2:02 PM from Mr. Sheriff Rasheed, MSU Access Center Coordinator that, "There are processes in place to accommodate students who might miss classes due to experiencing disability related challenges." and advising the student "let us meet next week to discuss what options might be available to you." and instructing the student to "schedule an appointment with me" by contacting the Access Center.

B. That Professor Traylor failed to inform the Dean of Student Engagement and Wellness regarding this correspondence while presenting material misrepresentations submitting variations of the erroneous allegations contained in his correspondence with Mr. Rasheed while displaying an argumentative and

ATTACHMENT 1

combative position to the students true nature of the communications taking place regarding the student's poor academic performance and attendance.

C. That Professor Traylor obstructed the student from formally presenting his complaints to Mr. Rasheed and Ms. Gilliard for adjudication in accordance with 'the University's' policy regarding the five separate detailed allegations presented by the student in response to Professor Traylor's unsubstantiated claims.

D. That Professor Traylor's actions were purely retaliatory in response to the students notification to the above-named parties presented "in good faith" in full accordance and compliance with the 'Student Code of Conduct' and Chapter 6 of the "Students Complaint Resolution Policy' found in the 'Presidents Operational Policies'.

E. That in the course of this communication Professor Traylor violated the university's policy regarding the 'Right to Student Privacy' by 'Cc'ing' his supervisor Ms. Debra Gilliard during his email communications with 'the Student'.

F. That Professor Traylor's reported actions in 'the University's' Testing Center via email correspondence of October 16, 2018 at 1:00 AM, 8:03 AM and 8:07 AM and the included commentary, Professor Traylor was in non-compliance in granting the student's request for a "Reasonable Accommodation" presented by the student "in the hallway" on the morning of Exam 2, Oct 15, 2018.

G. That the entirety of the case is not based on fact-based evidence but rather blatant material misrepresentations, hearsay and innuendo as contained in the 'Notification of Suspension' dated Oct 23, 2018 and the 'Final Determination' dated Nov 1, 2018; and the student's out of context statements that, "you admitted to following your faculty member down the hall" and "You admitted approaching Professor Traylor on 10/17/18 after class and raising your voice so that other students could hear you." Professor Traylor also alleged that "the student called (him) a 'coward' for not coming out from behind the desk." during a brief exchange that allegedly "lasted fifteen minutes" and that he had "two witnesses to the (alleged) exchange", Ms. Frank never produced the alleged witness statements requested by the student to support or disprove Professor Traylor's allegation and further alleges to have retrieved 'evidence' from Professor Traylor against the unfounded allegations as a "suggestion" by the student, in addition to being provided with this documentation during the hearing supporting the students defense represented in the email thread

ATTACHMENT 1

between the student, Professor Traylor and Mr. Rasheed supporting the student's defense.

H. If, by a preponderance of the evidence, Defendant has proven beyond a reasonable doubt that; whereas the student was notified on October 23, 2018 that the Student may have violated the student code of conduct for the alleged violation:

> 03.a. Verbal abuse, threats, intimidation, coercion or any unwelcome conduct by an individual(s) that is sufficiently severe or pervasive that it alters the conditions of education or employment and creates an environment that a reasonable person would find intimidating, hostile or offensive.

The "Final Decision" of Nov 1, 2018 "After reviewing the information . . . found you responsible for violating Article III:

> Section B.03. Assault, physical abuse, brawling or any conduct which threatens or endangers the health or safety of any person. -- Responsible"; acts of which the student was never alleged to have committed.

I. That by their actions, the former Dean of Student Engagement and Wellness; Mr. David Haden, Associate Dean of Student Engagement and Wellness; and Raul M. Sanchez, J.D., Executive Director of Equal Opportunity violated the rights and privileges afforded the student under the 'Student Code of Conduct' as defined in C.R.S. § 23-54-102, et seq. (2018) including CRS § 24-4-105.

J. That Ms. Frank's telephone contact with the student while in transit to 'the University' after previously confirming all arrangements for a police escort as directed not only altered the students present state of mind prior to the hearing thereby effecting the outcome, but indicates either a complete disregard for or lack of knowledge full knowledge of 'the University's' Safety Protocols and Procedures and presented a real and present immediate danger to the student. Further, 'the Student' will ask the Court if Ms. Frank's actions as defined by law would constitute a violation of the Colorado Revised Statutes regarding Witness tampering providing that "the act of attempting to alter or prevent the testimony of witnesses within

ATTACHMENT 1

civil proceedings, the attempt to alter or prevent testimony being sufficient there is no requirement that the intended obstruction of justice be completed."

K. The Court will be asked to determine if Ms. Franks introduction during the hearing of an additional baseless and unfounded allegation submitted by the IDP Coordinator and a 'Wellness Check' submitted by the Office of Military and Veteran Support dismissed off-hand, in addition to those of the NSLS, ironically the 'National Society for Leadership and Success', are supported by factual evidence provided by the several anonymous accusers that disprove the content of the 51 text messages and email exchanges between the student, the NSLS Coordinator, Executive Board members and associates cited in the Nov 1, 2018 'Final Determination' satisfy the requirements of law with regard to providing the accused with sufficient and timely information for the student to mount a proper defense; or rather an attempt to further malign and impugn the students reputation and character with additional "allegations of wrongdoing in order to show that he acted in conformity" with Professor Traylor's allegations.

L. Professor Traylor's assertion that, "I understand you want to share things with me, so I can accommodate you, but Michael, you provided me the notifications from the Access Center and I have complied with every requested accommodation. I do not understand what else you need from me to be successful in class" ignoring the content of his own statements to Mr. Rasheed regarding the students poor performance, attendance and missed exams, which by Professor Traylor's own estimate of the students four absences and two missed exam appointments in the Testing Center would subject the student to a grade of 'F' which he vehemently argued with Mr. Rasheed while the student attempted to secure arrangements to make up two exams and be excused from further attendance through remote learning accommodations due to the sudden disruption in the students life, including homelessness. Accommodations provided by the students three other professors.

M. Defendant, in response to Plaintiff's email request for an extension to file an appeal of the unlawful decision served upon the student dated August 1, 2019 wherein, Mr. Raul M. Sanchez, J.D., Executive Director, Office of Equal Opportunity, Title IX Coordinator alleges:

ATTACHMENT 1

1. "I reviewed your case with the Office of Student Conduct and Associate Dean Dave Haden to bring myself up to date regarding your situation."

2. "Your suspension resulted from very specific conduct on your part, which was detailed in your suspension letter."

3. "I do not see any grounds to open an investigation for discrimination."

N. David Haden, Associate Dean for Student Engagement and Wellness offering in his July 1, 2019 reply that:

1. "If you refer to the decision letter that was sent to you by Ms. Kelli Frank on November 1, 2018, you will note that she outlined specific alleged behaviors in which you had engaged." (Emphasis added).

2. "The decisions she reached were based upon those reported behaviors and your responses when she discussed those behaviors with you."

3. "Those decisions were not based upon either a perceived or known mental health diagnosis." (SEE ATTACHMENT 2)

O. In addition to the reported mental health condition known to Ms. Frank through her involvement in the student's authorized academic withdrawal from the Spring 2016 semester with supporting documentation provided by the students VA Clinical Psychologist and Dr. Ray Gornell, MSU Counseling Center, whose records indicate multiple entries directly related to the students difficulties with Professor Whitney Traylor, the student will submit the Auraria Medical Center 'Crisis Encounter Report dated Sept 24, 2018 ("That day in the Administration Building") creating the nexus between Professor Traylor's abusive and assaultive conduct toward the student and the sudden onset of the conditions reported to attendant, Richard Miccio, LCSW, the student will ask the Court if the acts and actions of Ms. Frank, Mr. Haden and Mr. Sanchez's actions to ignore the students repeated reports to the existence of the foregoing, indicates a willfully careless disregard toward the student in violation of the ADA and refusing to confirm the students relationship and efforts regarding this matter with the Access Center and Counseling Center were unfair and arbitrary as defined in the Defendant's Employee Manual barring employees of the University from advocating for the student.

ATTACHMENT 1

## IV. Irreparable Injury

Defendant ('the University'), by their actions, have caused irreparable damage to the relationship between the parties resulting in a complete lack of trust and confidence in 'the University' forcing Plaintiff to pursue educational goals elsewhere which will subject Plaintiff to having to duplicate previously completed classes at unknown cost, fees and expenses and delaying Plaintiff from pursuing gainful employment in the discipline related to the Bachelor's Degree program being pursued at the Defendants place of business. Additionally, by these actions, Plaintiff will not be able to qualify for federal student aid forcing financial restrictions and further hardship on Plaintiff's educational goals and career objectives. Plaintiff has experienced rapid, pronounced, severe and debilitating physical and exacerbated mental health issues previously known to the Defendant who in course of their action immediately cut off Plaintiff's access to continue receiving mental health care after an approximate one-year relationship with the University's Counseling Center causing Plaintiff continued delay in gaining access to sufficient and proper mental health care and causing Plaintiff further mental, emotional and physical distress.

## V. Relief

Plaintiff, known to Defendant(s) to be suffering Depressive Mood Anxiety Disorder through Plaintiff documentation provided by Dr. Susan Fisher-Johnston, VA Clinical Psychologist and Dr. Raymond Gornell, MSU Counseling Center has reengaged mental health care through Jefferson Center for Mental Health and has been recently been diagnosed with Bi-polar II disorder whose evaluation includes the introduction of mind and mood altering psychotropic drugs causing Plaintiff additional mental health distress. - **Damage indeterminable at this time.**

Plaintiff cannot ascertain the costs, fees and expenses of having to pursue educational goals elsewhere at this time, but can estimate the value of costs, fees and expenses at Defendants place of business to be **$8,000.00**.

Plaintiff estimates the value of potential lost wages, benefits and other opportunities including lost scholarships, grants, apprenticeship's and direct employment **to exceed $100,000.00** in addition to suffering disqualification from the federal student aid

ATTACHMENT 1

(FAFSA) program placing full financial burden for future graduate studies on Plaintiff in addition to previously accrued student loan debt. Plaintiff cannot ascertain the potential impact to their integrity, character and reputation – **Damage indeterminable at this time**.

ATTACHMENT 1

| | |
|---|---|
| Patient: | 900890126 - Michael F. Holowecki |
| DOB: | 04/21/1962 |
| SSN: | 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 |
| | |
| Date: | 09/24/2018 11:30 |
| Provider: | Miccio, Richard LCSW |
| Encounter: | Crisis |

### ACTIVE PROBLEMS
"People who are supposed to be doing their job aren't stepping up to do their jobs. And it's impacting me... I don't want to be pushed to a point where I crack and I can't turn back."

### CHIEF COMPLAINT
The Chief Complaint is: Pt c/o panic attack.sc. Client reports experiencing heightened anxiety, this morning, as he was driving to campus. He explains experiencing tunnel vision, difficulty concentrating, tearfulness and difficulty self-regulating. No past history of panic attacks.

### HISTORY OF PRESENT ILLNESS
Michael Holowecki is a 56 year old male.
• Recent weight loss.
• Decreased appetite -reports surviving on Nicotine and caffeine. Forgets to eat and will go several days without food. has lost weight over the last couple of months.
• Decreased concentrating ability.
• Feeling restless • Depression • Sleeping much more than usual • Difficulty falling asleep • Apathy • Thinking about suicide passive suicidal thoughts, no plan or intent. Expressing hopelessness and making statements such as "I just want it to end." Adding, "I don't want to kill myself". Denies any past suicide attempts. Reports a history of cutting behaviors as a teen
• Crying for no reason ° A desire to continue living ° Not having a suicide plan ° No previous suicide attempt ° No homicidal thoughts
° No consumption of alcohol -18 years sobriety. reports 22 years of alcohol abuse prior to sobriety • Drug use reports CBD use on a daily or weekly basis ° No marijuana by prescription Anticipatory anxiety- anxiety stems from practical issues such as housing, financial stability, course load at school, issues with other tenants in housing complex

### PAST MEDICAL/SURGICAL HISTORY
**Reported:**
   No access to weapons / guns in home.
   Physical Trauma: Self-inflicted injuries.
**Diagnoses:**
   Atypical depressive disorder

### PAST PSYCH MED TRIALS
None. No current or past psychotropic medications. Does not currently want medications, but indicates a willingness to consult with prescriber if anxiety continues to increase.

### PREVIOUS THERAPY
• History of psychological counseling

Patient:     900890126 - Michael F. Holowecki
DOB:         04/21/1962
SSN:         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

Date:        09/24/2018 11:30
Provider:    Miccio, Richard LCSW
Encounter:   Crisis

Previous psychiatric hospitalization.

Currently enrolled with outpatient services with MSU Counseling Center since April 2017. Also, seeing a psychologist with the VA. VA appointment scheduled for this Thursday, 9/27 and the counseling center for next Thursday, 10/4/. He expresses a positive outlook on his therapy experiences and at points gives praise to the counseling center.

## SOCIAL HISTORY
Alcohol: Alcohol use.
Education: Currently in school MSUD, Bussiness, 2019. Was originally enrolled in the mechanical engineering program but had to withdraw from a class as a result of life stressors. Now, pursuing business with a manufacturing minor.
Identifies as a veteran of the Marine Corps and is affiliated and recieved services from the VA.
Lives alone with his two dogs.
Divorced and has adult children.
30+ years in construction and site safety, with an AA degree in HVAC
Currently receiving Section 8 support and is at risk of eviction as a result of continued conflict with other residents and management.

## PAST PSYCHIATRIC HISTORY
Psychiatric treatment with hospitalization as a teen after excessive alcohol consumption and found trespassing in a wharehouse and attempting to light cardboard on fire.
Self-reported history of "depression with anxiety disorder.".

## PHYSICAL FINDINGS
- Vitals taken 09/24/2018 11:37 am
  BP-Sitting L              122/85 mmHg
  Pulse Rate-Sitting        79 bpm
  Respiration Rate          24 per min
  Temp-Oral                 98.5 F
  Height                    72 in
  Weight                    205 lbs
  Body Mass Index           27.8 kg/m2
  Body Surface Area         2.15 m2
  Oxygen Saturation         96 %

## TESTS
How often do you have difficulty getting things in order when you have to do a task that requires organization? RARELY.
How often do you feel overly active and compelled to do things, like you were driven by a motor? OFTEN.

Page 2

ATTACHMENT 2

Patient: 900890126 - Michael F. Holowecki
DOB: 04/21/1962
SSN: 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

Date: 09/24/2018 11:30
Provider: Miccio, Richard LCSW
Encounter: Crisis

How often do you fidget or squirm with your hands or feet when you have to sit down for a long time? SOMETIMES.
When you have a task that requires a lot of thought, how often do you avoid or delay getting started? SOMETIMES.
How often do you have problems remembering appointments or obligations? OFTEN.
How often do you have trouble wrapping up the final details of a project, once the challenging parts have been done? RARELY.
18. How often do you interrupt others when they are busy? SOMETIMES.
17. How often do you have difficulty waiting your turn in situations when turn taking is required? RARELY.
How often do you have difficulty keeping your attention when you are doing boring or repetitive work? SOMETIMES.
14. How often do you have difficulty unwinding and relaxing when you have time to yourself? OFTEN.
15. How often do you find yourself talking too much when you are in social situations? OFTEN.
11. How often are you distracted by activity or noise around you? OFTEN.
16. When you're in a conversation, how often do you find yourself finishing the sentences of the people you are talking to, before they can finish them themselves? RARELY.
How often do you make careless mistakes when you have to work on a boring or difficult project? VERY OFTEN.
12. How often do you leave your seat in meetings or other situations in which you are expected to remain seated? RARELY.
How often do you misplace or have difficulty finding things at home or at work? SOMETIMES.
How often do you have difficulty concentrating on what people say to you, even when they are speaking to you directly? OFTEN.
13. How often do you feel restless or fidgety? SOMETIMES.


ASSESSMENT
Client presents as a walk-in and presented with irritability and emotion dysregulation in the reception area. Client presents to the office noticeably irritable and apologizing to MA staff. He stands in the corner for several minutes practicing some deep breathing and crying intermittently. He is visibly irritable aeb bouncing leg, restlessness, rapid and loud speech and difficulty regulating own emotions. He expressed fear about his panic-like episode, this morning, and the need for immediate support. He presents with some thoughts of persecution and exhibits a high external locus of control. He is perseverating on professors not doing their jobs, feeling persecuted by the apartment management and other tenants, the VA not advocating enough for him and a universal injustices.


DISCUSSED
Validated client's sense of overwhelm in relation to heavy personal and school responsibilities. We explored past skills, techniques and strategies that he has used to manage emotions up to this

ATTACHMENT 2

Patient:     900890126 - Michael F. Holowecki
DOB:         04/21/1962
SSN:         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

Date:        09/24/2018 11:30
Provider:    Miccio, Richard LCSW
Encounter:   Crisis

point. Provided some psycho-education around panic symptoms, self-care (eating, hygiene, physical activity), breaking down tasks and crisis resources available.

**PLAN**
Client will discharge with a planned follow-up phone call from this writer on Wednesday, 9/26. If needed, after this phone call, this writer will provide another follow-up call to bridge the time until his next therapy appointment on 10/4. Client is aware of counseling resources on campus and crisis resources available over the phone or in-person. Client will utilize those resources, as needed.


**Richard Miccio LCSW**
Electronically signed by: Richard Miccio    Date: 09/24/2018 16:43


Electronically approved by: Richard Miccio    Date: 09/24/18 16:43

Page 4