FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2020 MAR 25  PM 3: 42

JEFFREY P. COLWELL
CLERK

BY_____DEP. CLK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.      1:19-CV-03124-GPG
                    (To be supplied by the court)


 MICHAEL FRANCIS HOLOWECKI                                    , Plaintiff

v.

METROPOLITAN STATE UNIVERSITY OF DENVER,
BOARD OF TRUSTEES OF METROPOLITAN STATE UNIVERSITY OF DENVER,
JANINE DAVIDSON, in her official capacity,
BRAELIN PANTEL, in her official capacity,
DAVE HADEN, in his official capacity and in his individual capacity,
KELLI FRANK in her official capacity and in her individual capacity,
WHITNEY TRAYLOR, in his official capacity and individual capacity,
DANIELA GARCIA, in her official capacity and individual capacity AND
RAUL M. SANCHEZ in his official capacity, Defendant(s).


*(List each named defendant on a separate line.  If you cannot fit the names of all defendants in
the space provided, please write "see attached" in the space above and attach an additional
sheet of paper with the full list of names.  The names of the defendants listed in the above
caption must be identical to those contained in Section B.  Do not include addresses here.)*

---

### FIRST AMENDED COMPLAINT

---

| NOTICE |
|---|
| Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files.  Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number.  A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.<br><br>**Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.** |

## A.   PLAINTIFF INFORMATION

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address. Failure to keep a current address on file with the court may result in dismissal of your case.*

MICHAEL HOLOWECKI, 1060 Teller St. Apt 302, Lakewood, CO 80214
(Name and complete mailing address)

720-572-0296   mholowecki@gmail.com
(Telephone number and e-mail address)

## B.   DEFENDANT(S) INFORMATION

*Please list the following information for each defendant listed in the caption of the complaint. If more space is needed, use extra paper to provide the information requested. The additional pages regarding defendants should be labeled "B. DEFENDANT(S) INFORMATION."*

Defendant 1:   Metropolitan State University of Denver
(Name and complete mailing address)
c/o Board of Trustees
Metropolitan State University of Denver
890 Auraria Pkwy, Suite 410, Denver, CO 80204
303-605-5469

Defendant 2:   Metropolitan State University of Denver
(Name and complete mailing address)
c/o Colorado Attorney General
1300 Broadway
9th Floor
Denver, CO 80203

Defendant 3:   Metropolitan State University of Denver
Board of Trustees
Metropolitan State University of Denver
890 Auraria Pkwy, Suite 410, Denver, CO 80204
303-605-5469

Defendant 4:   Metropolitan State University of Denver
Board of Trustees
c/o Colorado Attorney General
1300 Broadway
9th Floor
Denver, CO 80203

**SEE ATTACHMENT "B. DEFENDANT'S INFORMATION" FOLLOWING THIS PAGE.**

2

## B. DEFENDANT(S) INFORMATION

3.      Metropolitan State University is a corporation organized in the state of Clorado doing business ind the county and city of Denver, CO.

4.      Defendant, Board of Trustees Metropolitan State University (hereinafter "MSU") is a "body corporate, capable in law of suing and being sued."

5.      MSU is an arm of the State of Colorado operating as a University through its Board of Trustees.

6.      MSU accepts federal financial assistance as that term is used in Section 504 of the Rehabilitation Act.

7.      Janine Davidson ("Davidson") is a natural person who resides in Colorado and at the time of the relevant allegations herein, served as President of MSU. Davidson is the chief executive officer with general authority and responsibility over MSU. Davidson is responsible to, and represents, the Board of Trustees, who ultimately govern the University, but Davidson has final authority to make, enforce or adopt MSU's policies and practices concerning student affairs and student conduct, including disciplinary actions against Plaintiff.

8.      Braelin Pantel ("Pantel") is a natural person who resides in Colorado and at the time of the relevant allegations herein, Pantel was an employee of MSU serving as its Associate Vice President, Student Engagement & Wellness/Dean of Students. In her position Pantel has the authority to make, enforce or adopt MSU's policies and practices concerning student affairs and student conduct, including disciplinary actions against Plaintiff.

9.      Dave Haden ("Haden") is a natural person who resides in Colorado and at the time of the relevant allegations herein, Haden was an employee of MSU serving as its Associate Dean, Student Engagement & Wellness. In his position Haden has the authority to make, enforce or adopt MSU's policies and practices concerning student affairs and student conduct, including disciplinary actions against Plaintiff.

10.      Kelli Frank ("Frank") is a natural person who resided in Colorado and at the time of the relevant allegations herein, Frank was an employee of MSU, serving as its Director of Behavioral Intervention and Student Conduct. In her position Frank has the authority to make,

## B. DEFENDANT(S) INFORMATION

enforce or adopt MSU's policies and practices concerning student affairs and student conduct, including disciplinary actions against Plaintiff.

11.     Whitney Traylor ("Traylor") is a natural person who resides in Colorado and at the time of the relevant allegations herein, Traylor was an employee of MSU serving as Professor of the Business Department.

12.     Daniela Garcia ("Garcia") is a natural person who resides in Colorado and at the time of the relevant allegations herein, Garcia was an employee and faculty member at MSU.

13.     Raul M. Sanchez ("Sanchez") is a natural person who resides in Colorado and at the time of the relevant allegations herein, Sanchez was an employee of MSU serving as its Executive Director, Office of Equal Opportunity, Title IX Coordinator. In his position Sanchez has the authority to make, enforce or adopt MSU's policies and practices concerning student affairs and student/employee conduct, including disciplinary actions against Plaintiff.

14.     Haden was an authorized decision maker for MSU in his role as Associate Dean, Student Engagement & Wellness, such that any and all of his decisions adopting a particular course of action with regard to Plaintiff represent an act of official government policy.
Haden's conduct, as more specifically described herein, was undertaken within the course and scope of his employment and official duties at MSU and under color of law.

13.     Frank was an authorized decision maker for MSU in her role as Director of Behavioral Intervention and Student Conduct for MSU such that any and all of her decisions adopting a particular course of action with regard to Plaintiff represent an act of official government policy. Frank's conduct, as more specifically described herein, was undertaken within the course and scope of her employment and official duties at MSU and under color of law.

14.     Traylor was an authorized decision maker for MSU in his role as a Professor of Business Law for MSU such that any and all of his decisions adopting a particular course of action with regard to Plaintiff represent an act of official government policy. Traylor's conduct, as more specifically described herein, was undertaken within the course and scope of his employment and official duties at MSU and under color of law.

**2 of 3**

## B. DEFENDANT(S) INFORMATION

15.     Garcia was an authorized decision maker for MSU in her role as the Coordinator, Center for Urban Education for MSU such that any and all of her decisions adopting a particular course of action with regard to Plaintiff represent an act of official government policy. Garcia's conduct, as more specifically described herein, was undertaken within the course and scope of her employment and official duties at MSU and under color of law.

16.     Sanchez was an authorized decision maker for MSU in his role as Executive Director, Office of Equal Opportunity, Title IX Coordinator for MSU such that any and all of his decisions adopting a particular course of action with regard to Plaintiff represent an act of official government policy. Sanchez's conduct, as more specifically described herein, was undertaken within the course and scope of his employment and official duties at MSU and under color of law.

**C.**          **JURISDICTION**

*Identify the statutory authority that allows the court to consider your claim(s): (check one)*

__X__   Federal question pursuant to 28 U.S.C. § 1331 (claims arising under the Constitution, laws, or treaties of the United States)

      List the specific federal statute, treaty, and/or provision(s) of the United States Constitution that are at issue in this case.

      _____

      _____

____   Diversity of citizenship pursuant to 28 U.S.C. § 1332 (a matter between individual or corporate citizens of different states and the amount in controversy exceeds $75,000)

      Plaintiff is a citizen of the State of _____.

      If Defendant 1 is an individual, Defendant 1 is a citizen of _____.

      If Defendant 1 is a corporation,

      Defendant 1 is incorporated under the laws of _____ (name of state or foreign nation).

      Defendant 1 has its principal place of business in _____ (name of state or foreign nation).

      *(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

**SEE ATTACHMENT "C. JURISDICTION" FOLLOWING THIS PAGE.**

## C. JURISDICTION

### I. JURISDICTION AND VENUE

1.      The subject matter jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 and

1343, 29 U.S.C.§ 701, et. seq. ("Rehabilitation Act"), 42 U.S.C. § 1983, 1988 and the First and

Fourteenth Amendments to the United States Constitution.

2.      Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(1) and (2) because a

substantial part of the events giving rise to the claims asserted occurred in this district and because one or

more of the defendants reside in this district.

**D.    STATEMENT OF CLAIM(S)**

*State clearly and concisely every claim that you are asserting in this action.  For each claim, specify the right that allegedly has been violated and state all facts that support your claim, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim.  You do not need to cite specific legal cases to support your claim(s).  If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s).  Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

CLAIM ONE: _____

      Supporting facts:

**SEE ATTACHMENT "D. STATEMENT OF CLAIM(S) FOLLOWING THIS PAGE.**

## D. STATEMENT OF CLAIMS

### III.    GENERAL FACTUAL ALLEGATIONS

17.    This action is brought by Plaintiff Michael Francis Holowecki, a student at Metropolitan State University of Denver, alleging that he was suspended and barred from the Auraria Campus by Defendant, and in so doing, denied the Right to Due Process and other violations of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973.

18.    Plaintiff was chronically homeless for approximately four (4) years when notified, August 2016, of eligibility to receive a VA HUDVASH Section 8 Housing Voucher as an Honorably Discharged veteran of the United States Marine Corps.

19.    Plaintiff is disabled within the meaning of the Rehabilitation Act.

20.    The term "physical or mental impairment" includes "[a]ny mental or psychological disorder, such as an intellectual disability'[], organic brain syndrome, emotional or mental illness, and specific learning disabilities. 29 C.F.R. § 1630.2 (h)(2).

21.    Plaintiff's diagnosed disabilities affect the major bodily functions of the brain and neurological functions. Plaintiff's diagnosed disabilities cause functional disabilities or functional deficits, which affects mental functional ability and causes specific learning disabilities.

22.    Major life activities "include, but are not limited to ... speaking, learning, reading, concentrating, thinking, communicating and interacting with others." 29 C.F.R. § 1630.2(i)(1 )(i).

23.    Plaintiff's diagnosed disabilities limit major life activities such as speaking, learning, reading, concentrating, thinking and communicating and interacting with others.

24.    Plaintiff enrolled at MSU, August 2016, as a Bachelor of Science degree candidate in Mechanical Engineering Technology with a minor in Additive Manufacturing Engineering Technology and attended until his suspension on October 23, 2018, amassing significant federal student loan debt.

25.    Although Plaintiff's grades and performance met or exceeded acceptable standards, his declining disabilities led to more sudden and pronounced neurological, emotional and behavioral impairments, Plaintiff requested an Authorized Academic withdrawal from his classes.

26.    Plaintiff was granted an Authorized Academic Withdrawal from MSU, Spring 2018, on July 18, 2018.

## D. STATEMENT OF CLAIMS

27.     Plaintiff's Authorized Academic Withdrawal caused significant and irreparable harm to Plaintiff's academic goals and pursuits in Mechanical Engineering Technology and he applied to switch majors to a Bachelor of Arts Degree in Business through MSU's Independent Degree Program, Fall 2018.

28.     Upon his return to the university setting, Plaintiff successfully completed ___ credit hours at MSU.

29.     Due to his disability Plaintiff suffered frequent restlessness, irritability and discomfort accompanied with sudden onset of increased anxiety accompanied by intense bouts of panic attack, had trouble concentrating, remaining focused, controlling his thoughts, memory retention and recollection and communicating, especially when under extreme duress.

30.     Upon information and belief Plaintiff's disability is fully documented with the MSU Dean of Students Office of Student Engagement and Wellness, MSU Bursar, MSU Registrar and the MSU Counseling Center.

31.     Upon information and belief, at all times relevant to this matter, the named parties were knowledgeable to the Plaintiff's documented disability.

32.     Due to his disability Plaintiff requested from the MSU Access Center and was granted an accommodation under the Rehabilitation Act.

33.     The Access Center is the designated department responsible for determining appropriate academic adjustments and auxiliary aids and services for students with disabilities at MSU.

34.     The requested accommodation allowed Plaintiff, among other things, additional 50% time to complete tests and/or assignments, quiet space and noise cancelling headphones to relieve Plaintiff's stress and anxiety.

35.     The accommodation, in various forms, has been in place since granted by MSU in December 2017.

36.     Plaintiff was enrolled in four classes at MSU for Fall 2018 in MSU's Business program including Marketing ("Schofield"), Business Law ('Trayor"), Human Resources Management ("Smith") and Business Ethics ("Schulte") commencing August 22, 2018.

## D. STATEMENT OF CLAIMS

37.     Plaintiff's classes were all on-campus course, meaning that the instruction, assignments, tests and communication with the professor were all done on camera.

38.     Traylor was the professor of the Business Law class.

39.     Garcia was the Faculty Coordinator of the National Society of Leadership and Success (NSLS).

40.     On August 20, 2018, Sheriff Rasheed ("Rasheed"), MSU Access Center, provided Plaintiff with a 'Notification of Reasonable Accommodation' in Accordance with the ADA and Rehabilitation Act for distribution to each of his four (4) instructors, Fall 2018.

41.     On August 22, 2018 Plaintiff delivered the notifications in person, upon each of his four (4) instructors and discussed in detail the accommodations provided, his diagnosed disabilities, academic withdrawal, program change, goals, objectives and other personal information relative to Plaintiff's personal life and affairs.

42.     Plaintiff's request for an accommodation and the letter to Traylor were "protected activity" within the meaning of the Rehabilitation Act.

43.     On several occasions prior to his suspension, Plaintiff discussed during ongoing and continuous counseling with Dr. Raymond Gornell ("Gornell"), MSU Counseling Center and Rasheed regarding Plaintiff's ongoing difficulties communicating with Traylor and what Plaintiff reported to be Traylor's unprofessional conduct toward the Plaintiff and in the classroom.

44.     The comments and conduct Plaintiff attributed to Traylor, to be covered in greater detail below, included:

- Failure to properly employ University resources including University email and telephone to communicate with the Plaintiff to discuss a requested Reasonable Accommodation in accordance with the Rehabilitation Act;

- Inappropriate comments and statements during class lectures that Plaintiff immediately reported to be discriminatory;

- Inappropriate use of scheduled class time and University resources;

## D. STATEMENT OF CLAIMS

- Frequent tardiness, class and office hours cancellations due to outside professional interests in violation of the University President's published policies.

45.     But for his removal by suspension from the university, Plaintiff would have successfully completed his education in December of 2020 even though Plaintiff suffers from several clinically diagnosed disabilities which involve neurological, emotional and behavioral impairments, including Depressive Mood Anxiety Disorder, PTSD, APDNOS, Bi-Polar II and other APDNOS.

46.     On August 24, 2018 Plaintiff sent Traylor an email stating:

Hey Professor Traylor,

Thoroughly looking forward to enjoying the experience of your class. I appreciate you offering to provide referral services. I have two separate landlord/tenant actions currently pending. First, a 'Breach of Warranty of Habitability' filed in Jeffco on July 31 wherein the landlord made and (sic) agreement in Jeffco Court and reneged, all under the supervision of Leslie Ebert from Colorado Legal Services. The second is a civil rights violation lawsuit against the owner, property manager and City of Lakewood for 14th Amendment violations, and several criminal allegations for actions taken in retaliation against a member of a protected class. As it involves several federal agencies and the entirety of the departments of the City of Lakewood responsible for enforcement of the established laws, codes and ordinances it may be a federal case.

Thank you again and please advise of any referrals you may deem fit.

Enjoy the weekend see you Monday.

Michael

47.     On August 26, 2018 Traylor replied to Plaintiff's email:

Hey Sir,

Thank you for following up. I recommend you contact attorney Apryl Jones. Her husband, Floyd, also works at the firm and they both are very helpful! I want you to visit their website and see the services they offer and the links of resources listed on the website. They have many options related to housing issues, so their resources may be of benefit to you. Here is the link to the website.
http://coloradoaffordablelegal.com/Aboutus_2.html

Feel free to let them know that I referred you. They are very good and specialize in the areas you need.
Good Luck!

Prof. T.

## D. STATEMENT OF CLAIMS

48.   On September 15, 2018 Plaintiff emailed Traylor and advised him:
I was evicted from my apartment at the sheriff's demand at 1:15 pm on Thurs, Sep 13 and have been trying to get affairs in order since. I've been temporarily derailed in my efforts to stay on top of the assignments and I believe I'm on solid ground at this moment and eager to move forward without any further distraction or inconvenience, but I still need to finish settling in before I can focus on reviewing for the test and request permission to arrange through the Access Center to take the exam in the testing center before close of business on Tuesday, Sep 18, 2018 affording me time to work around an as yet unconfirmed meeting with my housing representatives. Thank you for your understanding and consideration and I'll speak with you further during scheduled class on Monday if additional information is required.

Respectfully submitted,
Michael Holowecki

49.   On September 16, 2018 Traylor replied to Plaintiff:

I am very sorry to hear about your housing situation. Stay strong out there.

Yes, I am happy to accommodate your request. I will leave the exam in the testing center tomorrow and you can take it anytime before 11:00 a.m. on Wednesday, September 20th. So, if you take it on the 19th that will be just finee. You do not need to come to class on Monday as the students will just be taking the exam. I will not consider you absent.

Good luck with the exam and everything else happening. See you soon.

Prof T.

50.   On September 16, 2018 Plaintiff responded to Traylor:

Thank you kindly sir. I look forward to getting this all behind me.

51.   On September 21, 2018 Plaintiff sent an email to his instructors Schulte, Schofield,

Smith, Traylor and Gornell and Rasheed.

52.   The subject of the email was 'Reasonable Accommodation Request' and stated:

Ladies and gentlemen,

I apologize for any inconvenience this has caused, but as previously advised, on Thursday, Sept 13, 2018 at 1:15 pm I was unlawfully evicted from my residence and forced to relocate to Idaho Springs temporarily. My time has been consumed in legal matters and finding accommodations where I can resume my life and studies free of distractions I believed were resolved when we spoke last Wednesday. I am near devastated at the seemingly insurmountable obstacles I face attempting to protect my rights, liberties and privileges, but I am close to resolving these distractions and have arrangements in place for my companion canines so I can resume attending classes as of Monday, Sept 23, 2018.

I have worked closely with the Access and Counseling Centers and will discuss arrangements to get on track directly with each of you as time permits. I can be reached

## D. STATEMENT OF CLAIMS

via reply email or at 720-572-0296 if we can discuss a plan prior to meeting on Monday so I can focus on anything I can complete over the weekend. Your understanding and consideration in regards to this matter is greatly appreciated.

Respectfully yours,
Michael Holowecki.

53.     On September 24, 2018 Plaintiff experienced a heightened level of anxiety and panic while commuting to school for scheduled classes as covered in greater detail below.

54.     Plaintiff arrived at the Auraria Campus in a heightened state of anxiety and panic and proceeded to the Business Department offices located on the third floor of the MSU Administration Building to schedule an appointment for a class assignment in Personal Selling.

55.     Plaintiff experienced overwhelming feelings of anxiety and panic as he was scheduling his appointment with a business department representative and being comforted and consoled by the representative in attendance.

56.     Still visibly shaken and in duress Plaintiff departed the business department office and proceeded to the third-floor elevator lobby to exit the Administration Building.

57.     Upon arrival of the first available elevator Traylor hurriedly exited the elevator and began walking at a fast pace in the direction of the business office Plaintiff had just departed.

58.     Plaintiff greeted Traylor who paused and looked in Plaintiff's direction for a moment before turning and continuing in his direction of travel before Plaintiff could alert him to his recent experience and feelings of possible need for immediate medical care and intervention.

59.     Plaintiff turned and again called out to Traylor and began moving in his immediate direction to relate the matters as stated above.

60.     Traylor stopped at the intersection of the third-floor north corridor and elevator lobby and expressed to Plaintiff that he was in a hurry to get to his office as Plaintiff moved at a hurried pace in Traylor's direction. Upon stopping Traylor asked Plaintiff "to back up a little bit". Plaintiff complied.

61.     As Plaintiff was hurriedly speaking in an excited and rapid pace due to his reported current mental state attempting to hasten taking time from Traylor, Traylor made movements to continue walking toward his intended destination, changing the distance between Traylor and Plaintiff. Traylor

## D. STATEMENT OF CLAIMS

again stopped and told, then shouted at Plaintiff to back away from him. Plaintiff complied with Traylor's request.

62.    Traylor listened as Plaintiff relayed the above information to Traylor and advised him that Plaintiff would likely again miss class as he intended to visit either Gornell or the emergency room if the stated conditions did not improve and the severity of the conditions present.

63.    Traylor appeared sympathetic to Plaintiff's situations and expressed to Plaintiff that he had provided him with referrals for legal representation.

64.    Plaintiff advised Traylor that his referral Apryl Smith, covered in greater detail above, declined to even hold a consultation with the Plaintiff and Traylor told Plaintiff he would provide additional referrals and asked Plaintiff to walk with him to his office as Traylor was going to otherwise be late for his scheduled office hours.

65.    Plaintiff and Traylor then walked east continuing their conversation where Plaintiff followed Traylor to the business department mailroom at the southeast corner of the third floor before ending the conversation.

66.    Plaintiff departed from Traylor and continued to his Marketing class to alert Schofield of the same information provided to Traylor.

67.    On September 24, 2018 Plaintiff presented at the Auraria Campus Medical Center Emergency Room and was attended to by Richard Miccio ("Miccio"), LCSW, Auraria Medical Center.

68.    Miccio submitted a report stating Plaintiff's chief complaint was a complaint of panic attack with experienced heightened anxiety this morning.

69.    Miccio further stated Plaintiff had stated Plaintiff's stated problem was "People who are supposed to be doing their jo aren't stepping up to do their jobs and it's impacting me."

70.    Miccio reports his assessments of Plaintiff as follows:

- Plaintiff presents with irritability and emotion dysregulation in the reception area;
- Plaintiff presents noticeably irritable and apologizing to MA staff;
- Plaintiff stands in the corner for several minutes practicing some deep breathing and crying intermittently;
- Plaintiff is visibly irritable and bouncing leg, restlessness, rapid and loud speech and difficulty regulating emotions;

## D. STATEMENT OF CLAIMS

- Plaintiff expressed fear about his panic-like episode this morning and the need for immediate support;
- Plaintiff presents some thoughts of persecution and exhibits a high external loss of control.

71.    Miccio's report following observation and contact with Plaintiff indicated the following:

- Plaintiff expressed experiencing a bout of tunnel vision this morning;
- Plaintiff experiences difficulty concentrating, tearfulness and difficulty self-regulating;
- Plaintiff has no past history of panic attacks;
- Plaintiff reports having decreased concentrating ability, feeling restless, depressed, and having difficulty falling asleep;
- Plaintiff expresses that anxiety stems from practical issues such as housing, financial stability and course load at school.

72.    Miccio discharged Plaintiff with referral to the MSU Counseling Center for follow-up.

73.    Upon discharge from the emergency room, Plaintiff presented to the Counseling Center to advise Gornell of the above in full detail and immediately departed the Auraria Campus.

74.    On October 15, 2018 Plaintiff awoke in an elevated state of anxiety and panic and attempted to contact Traylor via telephone and email regarding a test scheduled for later that day.

75.    Traylor was non-responsive.

76.    On October 15, 2018 Plaintiff arrived for his scheduled Business Law class still suffering from an elevated state of anxiety and panic and greeted Traylor upon his arrival outside of the classroom.

77.    Plaintiff explained to Traylor that his current stae of anxiety and panic prevented him from focusing and concentrating in order to sit for the scheduled exam and requested a make-up exam be administered as soon as possible in the testing center.

78.    Traylor acknowledged Plaintiff's stated mental state and granted permission to make up the exam as requested.

79.    Plaintiff proceeded immediately to the testing center to schedule the make up exam and was advised of the three-day scheduling requirement and advised of an email to be delivered once the test time is scheduled.

80.    Upon information and belief Traylor did not deliver the exam to the testing center on October 15, 2018 as previously agreed.

## D. STATEMENT OF CLAIMS

81.     On October 16, 2018 Plaintiff received an email from the Access Center Testing Center

stating:

> Scheduled Test for MGT 2210 52557 on 2018-10-18
> You are scheduled on 2018-10-18 from 10/18/18 11:00:00 AM to 10/18/18 12:55:00 PM.

82.     On October 16, 2018 Plaintiff received an email from the Access Center Testing Center

stating:

> Your professor just contacted me and let me know that you scheduled your exam for
> MTH 1112 for the wrong date. I have moved the exam to the correct date and will send
> you a confirmation shortly.

83.     On October 16, 2018 Plaintiff received an email from the Access Center Testing Center

stating:

> We have rescheduled your exam for MGT 2210 52557 to start at 11:00 AM and be
> completed by 12:55 PM on Tuesday October 16, 2018 at your professor's request. This
> time is tentative in case it does not work for you but your professor has instructed you
> must take the exam before class on Wednesday at 11AM as they will be going over the
> exam in class.
>
> If you have any questions, or need to cancel or discuss your exam time, please email us
> back or call our office at (303) 615-0199. If you cannot take the exam before Wednesday
> at 11 AM please contact your professor.
>
> Please remember that you must schedule your exams via our on line system at least three
> (3) business days in advance of the exam date (weekends do not count as business days).
> Please go now to our website to schedule your next exam.

84.     Upon receipt of the testing center notification Plaintiff immediately alerted Traylor via

email.

85.     This email made clear that Plaintiff was communicating specifically about Exam 2 that

he rescheduled with permission from Traylor in full accordance with the requirements of the Access

Center.

86.     Traylor replied to Plaintiff that he delivered the test to the testing center and Plaintiff

caused confusion by scheduling the make-up exam for the wrong date.

87.     The test that Plaintiff referred to was a test Traylor gave to the students on October 15,

2018. During this time frame Traylor and Plaintiff also communicated in person about the test.

## D. STATEMENT OF CLAIMS

88.     On October 16, 2018 Plaintiff emailed Traylor:

I'll be more thoughtful to plan my panic and anxiety attacks so they don't cause you confusion.

I would really appreciate if you would allow me 15 minutes in your office hours to communicate with you as I have my other professors, it makes it much easier on everybody when I have an open channel of communication, especially when in the midst of panic and anxiety attacks as I often am. I've dealt with tremendous adversity that has taken a mental, physical, emotional and financial toll on me, I am near broke and homeless if I don't change my circumstance soon and I am working diligently to regain my footing after having to take a short sabbatical to teach myself the intricacies of civil law, the courts, C.R.C.P. and torts far beyond the offerings I've had to date.

When I went to the Access Center I was told that I had to schedule the test 3 days out, I did, I've had great difficulty when trying to get you to respond to my messages, if you have an issue dealing with someone with a mood disorder that has been aggravated by the unlawful acts that took place upon my doorstep with no protection from the law or those assigned to look after my well-being, by all means, let someone know and I'll be glad to sit and have a conversation with them so we can come to a meeting of the minds on how badly these circumstances have affected me.

Respectfully yours,
Michael Holowecki

89.     Although Plaintiff's email clearly stated purpose was about the test, Upon

information and belief, Traylor would bypass all other available means of resolution to resolve

Plaintiff's Reasonable Accommodation request and any disputes through the stated channels of

low-level conflict resolution contained in the University's published policies.

90.     On October 18, 2018 Traylor emailed Plaintiff and copied via cc: his supervisor,

Business Department Chair Debora Gilliard (Gilliard"):

I am becoming increasingly concerned with our interactions as well as your email below. I am concerned because you continue to overstep boundaries with me that I have clearly and repeatedly asked you to respect. This semester you have physically approached me and discussed numerous legal issues you are having with various parties. Each time, I respectfully told you that I could not hear the matter or help you in a legal capacity because of our student/teacher relationship. Despite being informed of this, you continued (and continue) to discuss your legal matters and request my legal advice. I provided you with referrals for legal services, I directed you to the Access Center as well as the Office of Student Engagement and Wellness as they have many services that may benefit you. You have informed me that you are using their services.

Despite my repeated requests to respect boundaries physically and regarding our professional relationship, you disregarded my reasonable requests yesterday after class. You approached me after class requesting time to come in and explain your legal

## D. STATEMENT OF CLAIMS

situations so you could ask me questions. I was once again cornered in the room with you just inches away from me. I felt very uncomfortable as you continue to approach me this way despite my requests that you allow space between us when talking. When I asked you to back up a few inches, you started yelling and stormed out of the class.

Michael, this interaction is entirely inappropriate and makes me uncomfortable. I will expect in the future that you will not raise your voice at me or invade my space physically. I will also expect that you will not ask me for my legal opinion. This is now the fifth time that I have requested you respect my physical space.

Michael, I can appreciate the difficulties you are going through. Many of our students face life challenges while attending MSU. The University provides some wonderful services to help our students through 'tough times'. I would like to again encourage you to contact or Office of Student Engagement and Wellness. They offer counseling, can help with food and housing issues, etc. I know you are utilizing some of the services offered by the University and you may already be working with these folks, but if not you may consider them.

I appreciate you following the procedures outlined by the Access Center for any accommodations you may need in class. I am copying my chair, Debbie Gilliard, to this email.
Thank you.

Prof. Traylor

91.     October 18, 2018 Plaintiff replied by email to Traylor and Gilliard and copied via cc: Dr.

Raymond Gornell, MSU Counseling Center and Sheriff Rasheed, MSU Access Center:

In fact, had you given me the 15 minutes I again requested yesterday to explain what is an uncontrollable aspect of my life caused by an aggravated mental health condition ... The unlawful acts and actions taken against me have been both challenging and rewarding to the detriment of my present milestone goals, but with the cooperation of those who fully support me I have maintained obtainable objectives to recovering from the sudden setback beginning September 13, 2018 at 1: 14 p.m. I reported to you immediately. You continue to assert how accommodating you have been and allege that I "caused confusion" by scheduling to test 2 (sic) in the Testing Center due to the onset of a sudden panic attack to which you agreed. As required I scheduled the test for today, Thursday, October 18, 2018 @ 11 :00 a.m. and upon your arrival you immediately cancelled my appointment (email 10/16/18 8:03 a.m.), rescheduled the date to 'immediately' (email 8:07 a.m.) of which I received notification via email 45 minutes after said scheduled time of Tuesday, October 16, 2018 @ 11:00 a.m. I will discuss the anxiety you have caused me by this conduct with Dr. Gomell in the Counseling Center later during my appointment as we update progress and forecast my next goals. I would however very much like to speak to Ms. Gilliard in person to discuss this as well as the following:

Your continued assertions that I am attempting to extract "legal advice out of you". Obviously, you misconstrued the intent of my panicked comments when bumping into you in the 5th (sic) floor elevator lobby of the Administration Building just before I found myself in the emergency room of the Plaza Building at the Auraria Medical Center with Richard, a newly hired social worker there to immediately assist students such as myself suffering from an immediate uncontrollable mental health dilemma and

## D. STATEMENT OF CLAIMS

the very real possibility that medication may be the absolutely required (sic).
You are distracted by whatever appointment you must attend to (off-campus presumably) that caused you to end class at 11 :45 after hurriedly going over the material and my questions are directly related to the content I missed lectures on while forced to miss class. I again requested a 15 minute meeting to discuss how we can work best together beyond the past, you declined diverting me again to the resources you provided below.

I find your twice repeated offensive comments against Judge Judith Scheindlin, a well-respected Jurist of the New York State Family Court, who served 25 years and attained the highest seat during her career to be unethical, and possibly related to your personal goals as a 'Legal Analyst' at a local news station not good classroom manner. I made every attempt to discuss these issues with you in private but for whatever your reasons you refused. You have made some harsh and inaccurate statements against me and I am ready to elaborate on the above in my defense in the appropriate venue, if Ms. Gilliard will be so kind. I met with Sheriff Rasheed on Wednesday and discussed the open-ended question of my make up exams so I can finalize my plans, I need to know when you can accommodate me. I'm off to see Dr. Gornell now, please keep me apprised.

Respectfully yours,
Michael Holowecki

92.     On October 18, 2018 Traylor replied to Plaintiff, Gilliard, Gornell and Rasheed:

Michael,

I am interested in your success and well-being. I do not think this form of communication is best at this juncture.

You have never once attempted to talk with me during office hours. Instead, you approach me in the hallway, after class, in the elevator and other places where you aggressively discuss your legal matters with me. You may not understand that you are asking for legal advice, but when you tell me about your legal cases and then ask what I think, you are asking for legal advice. Office hours have been available to you since August. If you want to come see me during that time to discuss matters related to class, feel free.

Contrary to your statement, you have not only violated my personal space in the classroom after class, but it happened once in the hallway in the Administration Building after you got off the elevator. During that conversation alone, I asked you three times to step back a foot or two and that I couldn't talk to you about your legal matters. I understand you want to share things with me, so I can accommodate you, but Michael, you provided me the notifications from the Access Center and I have complied with every requested accommodation. I do not understand what else you need from me to be successful in class. You have told me numerous times about your medical conditions, housing issues, lawsuits, civil rights violations, and other personal matters related to your health and well-being. This was not necessary, but I have heard you. I have accommodated you and will continue to work with you how I can.

I do not understand your reference to Judge Judith Scheindlin and my alleged remarks about her. I have no idea who this is and I have no idea when I referenced her.

Yesterday I did not have an appointment. The entire class was exhausted and I let the

# D. STATEMENT OF CLAIMS

class out 15 minutes early. Our interaction lasted for 15 minutes. Fortunately, there were two students who witnessed the interaction.

I do not know what you need from me at this point. I have provided the test to the Access Center and requested you take the exam before class on Wednesday as I was going to return the exams. Please let me know.

Thank you,
Prof. Traylor

93.    On October 22, 2018 Plaintiff emailed Traylor, Gilliard, Gornell, and Rasheed:

Professor Traylor,

With all due respect to your position, I have asked you several times for the respect and privacy of an office hours appointment in person (hallways and classrooms included but never the confined space of an elevator) and via email, text and voicemail. Instead, you have repeatedly rebuffed me, created undue duress and confusion that has served only to elevate an already fragile mental health condition to extremely uncomfortable and unnecessary levels. Having shown such indifference and lack of candor, I am left with no alternative but to communicate with you via email. Honesty and integrity must be maintained in every relationship, especially one as esteemed as teacher-student.

Respectfully submitted,
Michael F. Holowecki

94.    On October 22, 2018 Traylor emailed Plaintiff, Gilliard, Gornell and Rasheed:

You are correct that when you have tried to discuss issues in the stairwell, in the hallway or after class when the next class was already coming in, I requested we discuss these issues during office hours.

I know (sic) realize that you were referring to Judge Judy. Michael, I am sorry you felt I disrespected television personality, Judge Judy. My comment to the class was do not cite Judge Judy as a source for your authority. I also discussed other shows that are not reliable sources for citing law, such as "Law and Order" and "Suits". I do not understand why you feel this is disrespectful to Judge Judy. Thank you for pointing out that she is a licensed attorney.

Regarding your decision to stop attending class. As you no (sic), there is a policy that more than 5 absences is an automatic fail. This policy is clearly stated in Paragraph 1 of the syllabus. You have already missed four classes and have not sought an accommodation related to missing class. If you are asking for an accommodation to not attend class the remainder of the semester, I would defer to the Access Center as to how such an accommodation can be facilitated. However, missing the rest of the semester will result in a failing grade as identified in Paragraph 1 of the syllabus. I can make an accommodation, but (sic) missing 70% of class is not possible. Mr. Sheriff, do you have any thoughts on this issue? I am happy to make accommodations that will work for Michael, but simply not attending class for nearly the last two months of the semester does not seem reasonable or appropriate.

Finally, you completely missed the first exam. You requested to take it in the testing center on September 17th. I left the exam for you and you sent me an email on

### D. STATEMENT OF CLAIMS

September 21st apologizing for missing the exam. This is the first I have heard from you about the exam. The second exam was returned to the class today. I requested that you take the exam last week, so I could return the exam to the students. I was informed that you would take that exam last week. You have apparently not taken the test yet. So, I will have to create another test and get it to the Access Center. I will do so today. The exam was given on October 15th. Thank You.

Professor Traylor

95.     On October 22, 2018 Rasheed immediately replied to Plaintiff, Traylor, Gilliard and Gornell stating:

Hello Professor Traylor,

There are processes in place to accommodate students who might miss classes due to experiencing disability related challenges. I agreed missing 70% of class might not be reasonable. Michael, let us meet this week to discuss what options might be available to you. To schedule an appointment with me, please call our office at 303-615-0200. I hope to see you soon Michael.

Best,

Sheriff

96.     On October 23, 2018 Plaintiff emailed Gornell and Rasheed and stated:

Gentlemen,

I apologize for the inconvenience this circular argument is presenting. As I had successfully worked with three other professors to work out missed classes, tests and assignments and the possibility of further disruption due to the extremely fluid condition that has been forced upon me, this individual has given me nothing but grief with cancelled office hours and classes as I attempted to secure an appointment convenient to both of us while on campus given the erratic state of affairs my life has become and was rebuffed on every occasion. As the forced eviction was sudden and immediate I had no control over that situation, but did my best to improvise, adapt and overcome. Professor Traylor's assertion to the impact of missed classes can be easily overcome as there are remedies in place for such things as medical, employment or educational pursuits that prevent students from attending class physically.

Given the lack of content provided in the classroom that is directly from the text, the current subject matter largely a rehash of prior formal education in Criminal Justice, real estate related topics regarding contracts, agency, fiduciary responsibility, etc., torts, an civil litigation which I unfortunately have extensive personal knowledge, if forced to sit in this class in the current environment I will, I see ne point in introducing me to further negativity when I can be more productive absorbing content elsewhere.

I can ill-afford any further setbacks and look forward to resolving this issue with the assistance of Ms. Gilliard and finishing out the remaining weeks of the semester without any further incident.

## D. STATEMENT OF CLAIMS

Thank you again for all of the support and encouragement you have afforded me, I appreciate you.

Sincerely,

Michael

97.     As of October 23, 2018 Plaintiff fully anticipated resolution of the stated matters through the Access Center and low-level, non-formal conflict resolution as allowed for in the University's policies.

98.     On October 23, 2018 Frank sent Plaintiff and Detective Justin Vevardi ("Vevardi"), Auraria Police "An important letter … emailed to you from Metropolitan State University." indicating that her office had received several reports about an incident that occurred "in several buildings on campus during the month of October."

99.     According to Frank's email indicated that Plaintiff may have violated the MSU Student Code of Conduct, Specifically, Article III. Section B. as follows:

02. Disruption or obstruction of teaching, research, administration, disciplinary proceedings, or other University activities including public service functions on and off campus, or other authorized non-University activities when the act occurs on University premises.

03.a. Verbal abuse, threats, intimidation, coercion or any unwelcome conduct by an individual(s) that is sufficiently severe or pervasive that it alters the conditions of education or employment and creates an environment that a reasonable person would find intimidating, hostile or offensive.

06. Failure to comply with a reasonable request from University officials or sworn law enforcement officers acting in performance of their duties and/or failure to identify oneself to these persons when requested to do so.

100.     According to Frank, Traylor and other unidentified students and staff across campus complained as follows:

- On multiple occasions this semester, the student has approached one of his faculty members to discuss personal legal issues and request legal advice.
- The student was told each time that the instructor could not legally advise him due to their student/teacher relationship and was referred to outside resources.
- On 10/17, the student was advised five times to back up during an interaction because he was standing within inches of the professor, making them feel uncomfortable the (sic) student then yelled aggressively at the professor in front of other students, called the professor a "coward" for not coming out from behind the desk to speak with him and stormed out of the room.

## D. STATEMENT OF CLAIMS

- Additionally, students and staff have witnessed similar behavior from the student across campus this semester and report feeling uncomfortable interacting with him in person, via phone, and electronically.
- The student communicates in a loud, angry, and fast-paced manner which disrupts both office and classroom spaces.
- The student frequently brings up ongoing legal, housing, and financial concerns with staff who have been unable to successfully interject/redirect the student to the topic at hand.
- When the student becomes angry, he raises his voice in an aggressive and intimidating manner that causes concern to those nearby.

101.    Frank's October 23, 2013 letter vaguely identifies Traylor, instead alluding to "one of his faculty members", "the instructor" and "the professor" and seems to indicate a host of witnesses to Plaintiff's alleged violations against Traylor, referring to them only as unidentified "students and staff".

102.    Upon information and belief, on October 18, 2018 Traylor sent a "CARE Report" to Frank containing gross misstatements of fact.

103.    The report by Traylor did not indicate that Traylor felt threatened or that Plaintiff made any specific threats or comments related to self-harm or harm to others.

104.    Frank knew that Plaintiff had never expressed any threat to harm Traylor and that Traylor had not complained to Sheriff that Plaintiff was threatening him in any manner.

105.    Frank further indicated repeated references to Plaintiff's contact with the Dean of Student's Office and "immediate demand to speak to me."

106.    Frank's reference to Plaintiff's impulsiveness was related to Plaintiff's disability and cognitive issues resulting from his documented disability.

107.    Upon information and belief, to be covered in greater detail below, at the time Plaintiff received Frank's October 23, 2018 letter, Traylor knew that he falsely attributed statements to Plaintiff that Plaintiff did not make.

108.    Upon information and belief, to be covered in greater detail below, at the time Plaintiff received Frank's October 23, 2018 letter, Traylor knew that on "On 10/17, the student was not advised five times to back up during an interaction because he was standing within inches of the professor."

## D. STATEMENT OF CLAIMS

109.    At the time Plaintiff received Frank's October 23, 2018 letter, Traylor knew that on "On 10/17, the student did not "yell aggressively at the professor in front of other students or call the professor a "coward" for not coming out from behind the desk."

110.    Further, Traylor made no attempt or effort to correct the record of errors, omissions and/or misrepresentations in his submitted CARE Report, or subsequent telephone conversations with Frank, to reflect the detailed statements he submitted to Gilliard and Rasheed in the email communications between Plaintiff, Traylor, Gilliard, Rasheed and Gornell from October 16, 2018 to October 23, 2018 covered in greater detail above.

111.    Upon information and belief, Plaintiff was also the only student in Traylor's class who was disabled and had requested an accommodation.

112.    The letter further indicated that until the case was resolved Plaintiff was prohibited from participating in his classes and prohibited from having contact with Traylor.

113.    Frank's letter prohibiting Plaintiff from attending class was an interim suspension pursuant to the MSU Student Code of Conduct

114.    The MSU Student Code of Conduct requires a Conduct Hearing in all but very limited cases before a student can be suspended from MSU.

115.    At the time the October 23, 2018 letter was sent to Plaintiff suspending him from participating in his classes class, no Conduct Hearing had been held.

116.    The MSU Student Code of Conduct provides for interim suspensions prior to a Conduct Hearing only in limited circumstances.

117.    Even where an interim suspension without a Conduct Hearing is warranted, students are entitled to a full Conduct Hearing prior to any permanent suspension.

118.    The circumstances in which an interim suspension may be imposed prior to a Conduct Hearing are: 1) To uphold the safety and well-being of members of the campus community or preservation of campus property; 2) To support the student's own physical or emotional safety and well-being; or 3) If the student poses a definite threat of disruption of, or interference with, the normal operation of the University.

## D. STATEMENT OF CLAIMS

119.   None of these circumstances were present at the time Frank imposed an interim suspension on Plaintiff on October 23, 2018.

120.   Plaintiff responded via telephone to Frank on October 23, 2018.

121.   However, Frank was in a meeting from which she could not be disturbed.

122.   On October 23, 2018 Plaintiff again contacted Frank by email responding to Frank's October 23, 2018 letter and requested that he be allowed to remain in classes.

123.   The October 23, 2018 Plaintiff email to Frank, Gilliard, Rasheed, Gornell and Traylor, stated in relevant part:

> You might recall having met previously to discuss my academic withdrawal, change in major, and the setbacks caused by unlawful conduct served against me at my residence to the writers goals, ambitions, hopes and desires and the deleterious impact outside influences with a legal responsibility to the writer has caused significant setbacks to the writers mental, physical, emotional, financial and academic well-being.
>
> I am scheduled to conduct a 'Penske Role Play' for my Marketing Personal Selling class and lectures, interviews and activities with the MSU Denver Chapter of the National Society of Leadership and Success that this suspension based on false statements and allegations will impact and request an immediate hearing where I can present statements, emails and witnesses to speak against these wrongfully levelled allegations.
>
> Academic and service related witnesses including MSU Denver staff members Dr. Devi Kalla, PhD, Dr. Ray Gornell PhD, Sheriff Rasheed, April Schoffield, Patrick Smith, Thomas Schulte, Lisa Kirscht, LCSW Richard at the Auraria Campus Medical Center and several students who are familiar with my personal struggles, sympathetic and accepting of the unwanted and discomforting digression from the progress I had previously made to date. To allow this travesty to further impact my educational goals violates the rights granted to the student, Professor Traylor overstepped his bounds and denied the several parties, the student, Sheriff Rasheed, MSU Denver Counseling Center, and Ms. Debora Gilliard ... to amicably settle the differences and restore peace and understanding between the parties ... and ... to properly state the allegations of 'unethical conduct' to be leveled against Professor Traylor for his unethical classroom conduct which the writer also believes to violate the Colorado Bar Association's 'Code of Conduct'.

124.   On October 23, 2018 Frank replied to Plaintiff:

> Hello Michael,
>
> Yes I am quite aware of your academic withdrawal as I was involved in processing the paperwork.
>
> I reviewed your emails and I'm glad you want to get this situation resolved promptly. However, as my front desk staff communicated when you called earlier, I am unavailable to meet with you until tomorrow and until further notice you are not permitted to be on

## D. STATEMENT OF CLAIMS

the Auraria Campus or attend classes. I understand you are concerned about your classes tomorrow, but know that arrangements can be made to communicate with your faculty and discuss options for your missed coursework. In the meantime, you should follow the instructions in your conduct letter which states that you need to schedule a time to meet with me to discuss the concerns reported to our office. This is your first priority before any adjustments can be considered for the campus restriction. I can meet you at 11am tomorrow in my office which is located in Tivoli 311. You will need to call the Auraria Campus Police Department (303-556-5000) to obtain a police escort for the meeting. If you are on campus without approval, you will be arrested or ticketed for trespassing.

During our meeting tomorrow, you will be provided an opportunity to present information about your perspective. Please confirm with me that you plan to attend our meeting at 11am tomorrow and call the Campus Police to arrange your escort in the morning.

125.   On October 23, 2018 Plaintiff emailed Frank, Rasheed, Gornell and Davidson:

I will make all arrangements with the campus police to be in attendance at 11:00 am.

126.   On October 23, 2018 Plaintiff emailed Frank, Rasheed, Gornell and Davidson:

I have made arrangements to meet an escort in the lobby of the Administration Building at 10:45 am and will have a fellow student who is personally familiar with the students life, both on-campus and off, the assaults served upon the students residence in retaliation against the student for filing lawful and legal complaints with local and federal agencies having jurisdiction, and other factors that have aggravated the students pre-existing mental health condition that have caused far-reaching setbacks that have caused an escalation in existing depressive mood anxiety disorder symptoms including: frequent severe panic and anxiety attacks, loss of appetite and excessive weight loss, lack of concentration and focus leading to an authorized academic withdrawal from a 15-credit course load Spring 2018, restlessness and sleeplessness, depression, irritability and moodiness associated with the students documented mental health condition.

127.   On October 24, 2018 Frank responded to Plaintiff's email:

Thank you for confirming your police escort is scheduled and that you are coming in at 11am to meet me in my office. I'm glad you provided this context in advance, as this would have been a great deal of information for you to try to convey in our 1 hour meeting. My focus for the meeting will be the same as I have for every conduct meeting with students: to seek to understand your perspective so that I can make a determination of responsibility or non-responsibility about the recently alleged misconduct. I look forward to having a good discussion this morning when you arrive.

128.   On October 24, 2018 Frank emails Plaintiff in an attempt to advise him:

Michael,

The Auraria Police can meet you at the corner of 9th and Auraria Parkway (between the Tivoli Garage and Student Success Building) for your escort. This is far more convenient than having you meet them at the Administration Building to walk over to the Tivoli. Can you please meet them there at 10:45/10:50 and they will meet you?

## D. STATEMENT OF CLAIMS

129.     On October 24, 2018 Frank contacted Plaintiff on his cell phone while in transit to the Auraria Campus to attend Frank's hearing in an attempt to advise him the last-minute change to Plaintiff's confirmed arrangements for a police escort as being "more convenient", because she "was afraid you didn't get my email."

130.     Plaintiff was immediately put in duress and expressed shock and bewilderment at

Frank's contact and declined the request advising Frank that Plaintiff will arrive shortly as per the

Plaintiff's previously agreed to escort arrangements.

131.     Plaintiff further advised Frank that her contact was inappropriate and had caused an

elevated state of anxiety and panic to the Plaintiff.

132.     Frank apologized and stated she "was not fully aware previously of the University's

policy regarding police escorts to hearings" and that "a detective will be here and present during the

duration of the hearing anyway."

133.     Plaintiff asserts that Frank's actions triggered an immediate mental and emotional

reaction from Plaintiff resulting in an elevated sense of panic and anxiety.

134.     Plaintiff arrived at the Auraria Campus Police Department ("ACPD") for his escort to the

hearing in the Tivoli Tower where he was consoled and comforted after being observed in active mental

and emotional duress.

135.     ACPD escort continued to console and comfort to Plaintiff while walking between the

Administration Building and Tivoli Tower.

136.     Plaintiff was met at the Tivoli Tower and accompanied in the hearing by classmate Logan

Sigala ("Sigala").

137.     Sigala's role was not as an advisor, but as moral support, witness and casual observer to

the proceedings.

138.     Sigala immediately observed and acknowledged Plaintiff in active mental and emotional

duress and also consoled and comforted Plaintiff in the moments before and during the hearing.

139.     Upon entering the hearing with Sigala, Plaintiff found Frank and Vevardi already present

in the hearing room.

## D. STATEMENT OF CLAIMS

140.     Plaintiff immediately informed Frank and Vevardi to his elevated mental and emotional state and stated that Plaintiff found Frank's telephone contact was inappropriate and unprofessional and put Plaintiff in an unsettled state of duress.

141.     During the hearing Plaintiff's mental and emotional state did not improve, but was instead repeatedly agitated by what Plaintiff identified as Frank's disregard for Plaintiff's rights as afforded by the Student Code of Conduct and the Constitution.

142.     During the hearing Frank, Vevardi and Sigala observed and acknowledged Plaintiff in extreme emotional duress and took time to console and comfort Plaintiff at various points during the hearing.

143.     During the hearing Frank repeatedly asserted to Plaintiff that she was in full compliance with the Student Code of Conduct and the Plaintiff's rights even though Plaintiff protested that the 'Notice of Interim Suspension' failed to properly identify the injured parties, provide detailed and specific identification of the location of the alleged incident(s), provide detailed and specific allegations of wrongdoing allegedly supported by the submission of written CARE Reports that would have allowed Plaintiff to prepare and present a proper defense.

144.     During the hearing Frank presented her case and preliminary findings orally and denied Plaintiff's every request to examine evidence including CARE Reports submitted to the CARE Team.

145.     The CARE Team operates under FERPA. As such, information provided in a CARE Report becomes a part of the student's educational record and FERPA regulations apply; as such, a student may be able to review the content of the report.

146.     By refusing to allow Plaintiff to examine the CARE Reports in her possession Frank was in violation of FERPA regulations.

147.     During the hearing Frank denied Plaintiff's requests to examine any witness statements in her possession and call and question witnesses including those identified by Plaintiff, Traylor and Frank.

148.     During the hearing Sigala told Frank and Vevardi that Plaintiff presented no imminent threat that warranted his Plaintiff's suspension and removal from MSU.

## D. STATEMENT OF CLAIMS

149.    During the hearing Frank informed Plaintiff that the CARE Team actually received a

total of four separate CARE Reports

150.    The CARE Report is a means by which students and staff can communicate with The

CARE Team any concerns about an MSU student who may be struggling or whose behavior is

concerning, risky, or potentially harmful to himself, herself, others, or the community and encourages

individuals to please file a Care Report.

151.    By filing a CARE Report the CARE Team can access the situation, piece together any

possible other information about the student's situation, and respond appropriately.

152.    The CARE Team identifies some things that may lead to the filing of a CARE Report

including:

- A student is struggling with a difficult life circumstance or health issue;
- A student is displaying unusual or out-of-character behavior;
- A student is experiencing significant loss such as the death of a family member or loss of safe housing;
- A student is communicating they are a reported victim of harassment;
- A student is missing class for an extend period of time;
- A student is experiencing a high level of stress;
- A student is displaying behavior that is disruptive or negatively impacting the classroom or work environment.

153.    The CARE Team identifies a variety of possible actions that may occur once a CARE

Report has been filed based on the nature and concern level of the report, the student's other or past

behavior(s), and the context of what's occurred and lists the following as possible 'next steps' once the

CARE Team receives a report regarding a student:

- The CARE Team may educate the reporter on how to assist the student (i.e. making a referral to a campus resource), if the person making the report is comfortable doing so and if appropriate, given the nature of what has been reported.
- The CARE Team may reach out to the student directly to request a meeting, to make a referral, or to take other action.
- The CARE Team may refer the situation may refer the situation to the Student Conduct process, if there is evidence of a violation of the Student Code of Conduct.
- The CARE Team may provide consultation to the Student Conduct Officer in these cases.

154.    It is the Plaintiff's knowledge and belief that Frank comprised the entirety of the CARE

Team making all determinations and decisions solely and individually after receiving the CARE Reports

covered in greater detail above.

## D. STATEMENT OF CLAIMS

155.    Frank was the Student Conduct Officer responsible for Plaintiff's suspension and

removal from MSU.

15.    The MSU Student Code of Conduct provides that students have the right to have an

advisor of their choice present at the hearing and the advisor may be an attorney.

157.    The MSU Student Code of Conduct further provides that:

Hearings:

- Hearings shall be conducted in private.
- Admission of any person to the hearing shall be at the discretion of the Conduct Officer within outlined policies.
- In hearings involving more than one respondent, the Conduct Officer at his/her discretion may permit the hearings concerning each student to be conducted concurrently.
- Both the respondent and the complainant may present witnesses pertaining to the alleged incident. The Conduct Officer will meet with any witnesses prior to the conduct hearing to review the evidence they have to share pertaining to the case.
- Pertinent records, exhibits and written statements may be accepted as evidence for consideration by the Conduct Officer at his/her discretion. After the hearing, the Conduct Officer shall determine whether the student or organization has violated the Student Code of Conduct.
- The Conduct Officer's determination shall be made on the basis of whether it is more likely than not that the respondent or organization violated the Student Code of Conduct.
- If a student or organization is found responsible for a violation of the Student Code of Conduct, the Conduct Officer may assign a range of sanctions (Article IV. C.)
- Except in the case of a student charged with failing to obey the summons of a Conduct Officer or University official, no student may be found to have violated the Student Code of Conduct solely because the student failed to appear before a Conduct Officer. In all cases, the evidence in support of the charges shall be considered.
- University legal counsel shall serve as legal advisor to the Conduct Officer.

158.    During the hearing Frank read from documents contained in a folder on the table before

her and identified to Plaintiff the four CARE Reports received by the CARE Team as follows:

- Lauren Johnson (Johnson), MSU Military and Veterans Outreach on or about October 18, 2018 concerned that Plaintiff presented at the Mil/Vet Office in Tivoli Tower and expressed that his life circumstances were becoming overwhelming and he was in need of additional assistance and support, or words to that effect.
- Lisa Klitch (Klitch), MSU IDP Coordinator on or about October 18, 2018 regarding Plaintiff's reaction to Klitch's unpreparedness for a meeting attended by Plaintiff same date to submit class selections for his independent degree business program, even though confirmation of the appointment was delivered to Plaintiff and Klitch on October 3, 2018 clearly indicating Plaintiff's requirement to change programs and that "He has a lot on his plate."

## D. STATEMENT OF CLAIMS

- Traylor, with knowledge and belief, on October 18, 2018 as covered in greater detail both above and below.
- The NSLS, formally Garcia, on or about October 16, 2018 that unidentified individuals within the purported student experience enhancement organization were uncomfortable communicating with Plaintiff via phone, text, email and in person and that Plaintiff abused the privileges afforded by same by being excessive in his communications and demanding immediate or near immediate response.

159.    Upon information and belief, at the time she submitted the CARE Report Johnson knew the Plaintiff was struggling with a difficult life circumstance causing him to display unusual or out-of-character behavior after experiencing significant loss due to loss of safe housing as a reported victim of harassment which caused him to suddenly miss classes and exams for an extended period of time which caused him to experience a high level of stress and in so doing acted in full accordance with MSU's established CARE Team Reporting policies in the best interest of the Plaintiff and the University.

160.    Upon information and belief, at the time she submitted the CARE Report Klitch knew the Plaintiff was struggling with a difficult life circumstance causing him to display unusual or out-of-character behavior after experiencing significant loss due to loss of safe housing as a reported victim of harassment which caused him to suddenly miss classes and exams for an extended period of time which caused him to experience a high level of stress and in so doing failed to act in full accordance with MSU's established CARE Team Reporting policies in the best interest of the Plaintiff and the University.

161.    Upon information and belief, at the time he submitted the CARE Report Traylor knew the Plaintiff was struggling with a difficult life circumstance causing him to display unusual or out-of-character behavior after experiencing significant loss due to loss of safe housing as a reported victim of harassment which caused him to suddenly miss classes and exams for an extended period of time which caused him to experience a high level of stress and in so doing acted in full accordance with MSU's established CARE Team Reporting policies in the best interest of the Plaintiff and the University.

162.    Upon information and belief, at the time she submitted the CARE Report Garcia knew the Plaintiff was struggling with a difficult life circumstance causing him to display unusual or out-of-character behavior after experiencing significant loss due to loss of safe housing as a reported victim of harassment which caused him to suddenly miss classes and exams for an extended period of time which

## D. STATEMENT OF CLAIMS

caused him to experience a high level of stress and in so doing failed to act in full accordance with MSU's established CARE Team Reporting policies in the best interest of the Plaintiff and the University.

163. Upon information and belief, at the time of the hearing, and all times relevant before and after, Frank immediately dismissed Johnson's CARE Report submission even though Frank knew that Johnson reported that the Plaintiff was in need of additional assistance due to his ongoing struggles with a difficult life circumstance causing him to display unusual or out-of-character behavior after experiencing significant loss due to loss of safe housing as a reported victim of harassment which caused him to suddenly miss classes and exams for an extended period of time which caused him to experience a high level of stress and in so doing failed to act in full accordance with MSU's established CARE Team Reporting policies in the best interest of the Plaintiff and the University.

164. Upon information and belief, at the time of the hearing Klitch, Traylor, Garcia and Frank knew the Plaintiff was struggling with a difficult life circumstance causing him to display unusual or out-of-character behavior after experiencing significant loss due to loss of safe housing as a reported victim of harassment which caused him to suddenly miss classes and exams for an extended period of time which caused him to experience a high level of stress and in so doing failed to act in full accordance with MSU's established CARE Team Reporting policies in the best interest of the Plaintiff and the University.

165. Upon information and belief, at the time of the hearing Klitch, Traylor, Garcia and Frank knew that Plaintiff did not display behavior that was disruptive or negatively impacting the classroom or work environment.

166. On October 24, 2018 Plaintiff received an email from his Business Ethics professor, Thomas Schulte ("Schulte").

167. The purpose of the email was to advise Plaintiff to the terms and conditions of the Plaintiff's Reasonable Accommodation request submitted on September 21, 2018.

168. The terms and conditions presented and stipulated by Schulte were stated as follows:

> Michael,
>
> Thank you for keeping me informed. As per our conversation the other day let me layout the plan we agreed upon for you to make up your work.

## D. STATEMENT OF CLAIMS

In light of your situation of having a major life event during the course of the semester we agreed that you can make up all missed work with minor penalties.

In addition I am willing to grant you any absences related to your situation.

Please respond letting me know if you agree to these terms.

169.     The Reasonable Accommodation between Plaintiff and Schulte was defined through a

course of multiple communications through personal conference and email beginning September 21,

2018 and took into consideration the Plaintiff's for circumstances.

The MSU Access Center Flexibility with Attendance Accommodation Procedures allow in part,

that:

- Since each class and situation is different, the extent of modifications to course attendance policies will be determined on an individual, case-by-case basis including consultation between the professor and the Access Center. The accommodation of flexibility with attendance is meant to provide periodic flexibility, if possible, when this flexibility does not compromise the fundamental requirements of the course.

- Students who seek to utilize their approved accommodations of flexibility with attendance must following these procedures:

  - If an exacerbation of your condition occurs during this semester, you should contact your Accessibility Coordinator to discuss options relative to your individual situation.

170.     Upon Plaintiff's information and belief, at no time relevant to this matter did Frank,

Traylor, Haden or Garcia attempt to make contact with Rasheed in the MSU Access Center as requested

by Plaintiff.

171.     Upon Plaintiff's information and belief, at no time relevant to this matter did Frank,

Traylor, Haden or Garcia attempt to make contact with Gornell in the MSU Counseling Center as

requested by Plaintiff.

172.     Schulte granted Plaintiff forgiveness of all absences from class due to Plaintiff's

circumstances even though class participation and group discussions were a weighted part of the course

outline.

173.     In contrast, as covered in greater detail both above and below, Traylor's syllabus states

clearly that learning the content of the course is solely the responsibility of each individual student and

## D. STATEMENT OF CLAIMS

the course was designed as a lecture with student participation through voluntary question and answers of

which Plaintiff was a frequent contributor.

174.     On October 25, 2018 Plaintiff emailed Frank, Davidson, Gornell, Rasheed and Amanda

Miracle with rebuttal evidence relative to 'Text messages related to allegations provided by NSLS

Executive Board':

> In fact, if you'd indulge me, Calvin Lovato, Chapter President, even found it acceptable to
> advise the student that a response time of 72 hours to a voicemail message was
> acceptable in a conversation he finally allowed 103 hours after the students initial attempt
> to contact him.
>
> Attached find the full history of ALL text messages between the parties that formally
> formed the 'Sunday Afternoon Team'. You failed to provide any warning in the
> October 23, 2018 NOTICE OF IMMEDIATE SUSPENSION to the allegations
> leveled in our meeting on Wednesday, October 24, 2018, as somehow fact-based
> according to the document you read from, without any benefit of supporting
> evidence. That the student discussed this matter in detail during a meeting held
> Monday, October 22, 2018 with Daniela Garcia, Program Coordinator; Rami Jordan,
> Chapter Secretary and Hussein 'Doe'.

175.     On October 25, 2018 Frank replied to Plaintiff's email:

> The length and nature of your emails today are causing me to question how much you
> heard from me in our meeting yesterday. You are welcome to submit emails to me to
> review as I mentioned in our meeting. However, I asked if you would like me to
> obtain emails from you directly or your professor and you stated that I could request
> them from the professor and let you know if he did not provide them. I did as you
> suggested and the professor has provided the emails between you, as well as the
> syllabus. I did receive the text messages you sent over to me as well as the email you
> just sent at 5:05pm. Any additional correspondence you would like me to review, I'm
> happy to consider when I am back in the office tomorrow.
>
> The reason I am emailing you only is because this is consistent with our practices to
> protect student privacy.

176.     Frank's email refers directly to obtaining the exculpatory emails from Traylor "as

suggested" by Plaintiff that are covered in full detail above as presented by Plaintiff at the time of the

hearing.

177.     Frank's closing comment refers to FERPA suggesting Traylor's inclusion of Plaintiff's

October 18 – 22, 2018 emails to Gilliard covered in greater detail above, constituted an additional

violation of FERPA committed by Traylor.

## D. STATEMENT OF CLAIMS

178.   On October 26, 2018 Plaintiff emailed Frank stating in relevant part:

> Allow the student first and foremost to extend the humblest of apologies to any and all persons who may have experienced any undue shock, alarm, concern, fear, threat, or imminent consequence of any comment, action, gesture, movement, adjustment or reaction to any and all needs, stimulus or outside influence affecting student from properly expressing, vocalizing or otherwise transmitting the immediacy of attention or inability to adjust to the current situation without separation of time and distance being afforded to allow restoration of all cognitive, physical, emotional and mental capabilities. The student accepts full responsibility for outcomes due to any role played, factually or allegedly, through any miscommunication, lack of discretion in written expression, sarcasm, confusion, complication, discomfort or distraction that may have been caused through the student's involvement. The student denies now or ever being an immediate or imminent threat toward anyone as reflected in the true character, goals, aspirations and faith and ethics-based foundation. Forgive the student also for becoming lengthy, verbose, detailed or become suspect of nefarious intent in written communications.

> As several personal life-events have collided to present new and intense challenges and threats to the student's personal health, safety welfare and survival, the personal needs and necessities of the student have caused him to resort and rely on instincts that may cause discomfort to those unfamiliar to the students intent as survival instincts have reportedly become more pronounced and evident in the student's communications, demeanor and physical appearance. I apologize for the length and the extent of the thoughts, feelings and emotions freely shared through my recent communications. They are not meant to be threatening, condemning or insulting. They are my honest and open expressions of who I am and the responses being experienced to the influences upon the student in that moment and I later return and analyze the Successes, Weaknesses, Opportunities and Threats that were present at the time.

179.   Plaintiff was also prohibited from attending the three other classes that he was also enrolled in during the Fall 2018 semester.

180.   Plaintiff was not prohibited from having contact with any other parties.

181.   Neither Frank, nor Traylor had a legitimate or lawful reason to deny Plaintiff access to the educational opportunities and constitutional protections to which he was entitled.

182.   Frank based her decisions on unlawful reasons and stereotypes of disabled students with mental and or learning impairments.

183.   On November 1, 2018 Frank sent Plaintiff "An important letter ... emailed to you from Metropolitan State University." indicating that:

> I am writing to inform you of my findings and related sanctions regarding your alleged violation of the MSU Denver Student Code of Conduct.

> Michael, I appreciate you meeting with me to share your perspective and aspects of your life experience. In discussions with you and several witnesses on campus, I learned that

### D. STATEMENT OF CLAIMS

you have displayed alarming and concerning behaviors across several areas of the institution, both inside and outside of the classroom. The reported behaviors included:

- derailing discussions in Professor Traylor's class toward your personal and legal circumstances.
- seeking legal advice/opinions from your faculty member after being advised that he could not help you in this way due to your professor/student relationship. Waiting after class and demanding that the professor provide you additional legal referrals after he stated he did not wish to discuss this matter with you any further.
- failure to respond to requests made multiple times by your professor to respect personal space and back away from him during interactions. this includes an interaction in the Administration Building where you admitted to following your faculty member down the hall after he exited the elevator and another interaction after class on 10/17/18.
- raising your voice, speaking with a rapid pace, and escalating when attempting to discuss your lawsuit and other personal circumstances. this has been observed in several offices on campus as well as the classroom environment.
- persistence with communicating via phone/text/email, demanding immediate or near-immediate responses from peers in the NSLS group and staff in the Dean of Students Office
- difficulty staying on topic and increased agitation even after being redirected by staff and faculty members back to the topic at hand.

184.    Frank's letter indicated that Plaintiff would require a police escort whenever on the

Auraria campus.

185.    Frank's letter further indicated that Plaintiff was suspended from MSU until May 31,

2019 and during this time he was not allowed on the Auraria campus without permission from the Dean

of Students Office.

186.    Frank indicated that she had found that Plaintiff violated Article III, Section B of the

MSU Student Code of Conduct as follows:

> 2.   Disruption or obstruction of teaching, research, administration, disciplinary proceedings, or other University activities including public service functions on and off campus, or other authorized non- University activities when the act occurs on University premises. – Responsible
>
> 3.   Assault, physical abuse, brawling or any conduct which threatens or endangers the health or safety of any person. – Responsible
>
> 06. Failure to comply with a reasonable request from University officials or sworn law enforcement officers acting in performance of their duties and/or failure to identify oneself to these persons when requested to do so. -- Responsible

187.    Frank made the decision to take the disciplinary actions against Plaintiff as set forth in

the November 1, 2018 letter.

## D. STATEMENT OF CLAIMS

188.    Upon information and belief Frank made the initial decision and was the final decision maker in suspending Plaintiff and imposing other sanctions against him.

189.    Upon information and belief, Davidson, Pantel and Haden ratified the decision to suspend and impose additional sanctions against Plaintiff.

190.    Davidson, Pantel and Haden are also responsible for enforcing constitutional violations against Plaintiff and can provide prospective injunctive relief.

191.    This was not an interim suspension but a permanent suspension for a definite time frame that Plaintiff was entitled to a full Conduct Hearing prior to this suspension.

192.    The suspension was intended to stifle Plaintiff's free speech and intimidate him to prevent him from pursuing hid non-formal complaint with the Access Center.

193.    Defendants did not have a legitimate pedagogical interest that was reasonably related to Plaintiff's suspension from MSU or any other purported reason for the suspension.

194.    MSU's decision to suspend Plaintiff from MSU had no valid educational purpose.

195.    MSU's decision to suspend Plaintiff for indicating that he was going to submit a complaint to the Access Center was a substantial departure from accepted academic norms.

196.    In suspending Plaintiff, Defendants failed to comply with the due process procedures outlined in the Student Code of Conduct or that are constitutionally required.

197.    The decision to suspend Plaintiff from MSU was not an exercise of professional academic judgment.

198.    Frank also indicated in support of the discipline that:

Insisting that your professor

199.    Further, Frank indicated that: "this was evident when you called my office."

200.    Frank came to the decision without giving Plaintiff the opportunity for a full hearing and the opportunity to examine witnesses and have an attorney present to present his point of view.

201.    The November 1, 2018 letter also stated that in order to return Plaintiff was required to

202.    In addition, Frank did not provide Plaintiff with evidence of the underlying threatening

## D. STATEMENT OF CLAIMS

conduct that supported the determination that Plaintiff was "Responsible" for multiple violations of the Student Code of Conduct.

203.    At the time the November 1, 2018 letter was written Frank and Haden knew that Plaintiff's conduct did not involve explicit or implied threats.

204.    Upon information and belief, to the extent that Defendants contend that Plaintiff's conduct involved explicit or implied threats, the threats that Defendants relied on in suspending Plaintiff was he "asked for legal advice/opinion from your faculty member" and Plaintiff's statement that, "you admitted following your faculty member down the hall."

205.    At the time the November 1, 2018 letter was written Frank and Haden knew that Plaintiff's conduct did not involve Disruption or obstruction of teaching, administration or disciplinary proceedings.

206.    At the time the November 1, 2018 letter was written Frank and Haden knew that Plaintiff's conduct did not involve the failure to comply with a reasonable request from University officials or sworn law enforcement officer acting in performance of their duties.

207.    At the time the November 1, 2018 letter was written Frank and Haden knew that Plaintiff's conduct did not involve the failure to identify oneself to University officials or sworn law enforcement officers acting in performance of their duties when requested to do so.

208.    The MSU Student Code of Conduct requires that students receive written notice of the allegations, the charges they would support and the potential consequences in the event the student is found responsible.

209.    Frank and Haden failed to comply with these provisions.

210.    At no time prior to November 1, 2018 did Defendants provide Plaintiff with a preponderance of evidence of any allegations regarding when and to whom he engaged in conduct or behavior that resulted in Frank's determination that Plaintiff violated the Code of Conduct Article III, Section B.2. Disruption or obstruction of teaching, research, administration, disciplinary proceedings, or other University activities including public service functions on and off campus, or other authorized non-University activities when the act occurs on University premises. - Responsible

## D. STATEMENT OF CLAIMS

211.    At no time prior to November 1, 2018 did Defendants provide Plaintiff with a preponderance of evidence of any allegations regarding when and to whom he engaged in conduct or behavior that resulted in Frank's determination that Plaintiff violated Section B.3. Assault, physical abuse, brawling or any conduct which threatens the health or safety of a person. - Responsible

212.    At no time prior to November 1, 2018 did Defendants provide Plaintiff with a preponderance of evidence of what request made by Traylor, NSLS and several unidentified witnesses resulted in Frank's determination that Plaintiff violated Section B.06. Failure to comply with a reasonable request from University officials or sworn law enforcement officers acting in performance of their duties and/or failed to identify oneself to these persons when requested to do so, and when and by whom the request was made. - Responsible

213.    Plaintiff replied to Frank's email on November 1, 2018 which stated in part:

> The student disagrees with your findings and attempted to engage Dr. Raymond Gornell and Mr. Sheriff Rasheed to intervene that the conduct allegedly described is indicative of the student's mental health condition, aggravated by a lack of responsiveness to legitimate and reasonable requests. As indicated during our conversation in your meeting of Wednesday, October 24, 2018, wherein you aggravated the students mental health condition by you inappropriate contact while in transit, the student was left in a delicate state which was exhibited in the conduct you alleged to be threatening, Logan Sigala was there as a witness.

> The student respectfully requests immediate arrangements be made an appointment be convened in your office including Dr. Raymond Gornell and Mr. Sheriff Rasheed with no immediate contact made to the student before prior arrival, to discuss in a more rational and settled atmosphere, the students concerns, including Professor Traylor's shifting allegations.

> The student finds Professor Traylor's comments, conduct and attitude toward Judge Judith Scheindlin to be rooted in envy, animus, racism and discriminatory toward women.

> Please advise the student on where to direct his formal appeal.

214.    On November 29, 2018 Plaintiff received an email from Gornell which stated in relevant part the following:

> In response to your request during our phone conversation on 11/29/2018 this letter details that you have participated in services at the MSU Counseling Center and is in support of your appeal process.

> The current diagnosis of record is Anxiety Disorder. In addition to managing anxiety, and

## D. STATEMENT OF CLAIMS

also mood, you detailed ongoing stressors that have negatively impacted your academics including: ongoing difficulties with secure housing, ongoing difficulties with transportation and financial stress. You reported during th session on 6/21/18 that you were notified your lease was ending on 7/31/18. During the session on 8/31/18 you reported an eviction notice was placed on your apartment door. During the session on 9/20/18 you reported you were evicted from your apartment on 9/13/18 and were living in a hotel in Idaho Springs, of course this created additional difficulties with finances, driving a longer distance and placing some of your things in storage. All these additional stressors also compounded the anxiety you reported experiencing. You also detailed how the anxiety and stress impacted your interaction with professors.

As you are not able to continue with services at MSU Denver Counseling Center I encourage you to continue meeting on a regular basis with your psychologist at the V.A.

215.    On July 31, 2019 Haden emailed Plaintiff stating:

Dear Mr. Holowecki,

If you refer to the decision letter that was sent to you by Ms. Kelli Frank on November 1, 2018, you will note that she outlined specific alleged behaviors in which you had engaged. The decisions she reached were based upon those reported behaviors and your responses when she discussed those behaviors with you. Those decisions were not based upon either a perceived or known mental health diagnosis.

You specifically reference a decline in your mental health when discussing student conduct allegations. There are undoubtedly a significant number of students, faculty, and staff in the MSU Denver community who are functioning with either diagnosed or undiagnosed mental health challenges. Having a mental health diagnosis is not an impediment to succeeding in our campus community. However, having a mental health diagnosis does not excuse a member of our campus community from meeting the behavioral expectations to which we are expected to adhere.

I understand that you would like to appeal the conduct decisions reached last November. However, your decision letter outlined a November 8, 2018 deadline by which you needed to appeal your conduct decision if you believed there were grounds to do so under the Student Code of Conduct. You are not able to appeal the conduct decision at this point in time.

Best, Dave

216.    On August 1, 2019 Garcia emailed Plaintiff, Haden and Miracle stating:

I received your phone message earlier today. I reviewed your case with the Office of Student Conduct and Associate Dean Dave Haden to bring myself up to date regarding your situation. Your suspension resulted from very specific conduct on your part, which was detailed in your suspension letter. That letter also explains what you need to do if you wish to return to MSU Denver.

I do not see any grounds to open an investigation for discrimination. If you feel otherwise, please feel free to file a detailed complaint with this office. See my previous email messages to you, which outline in detail what you would need to do.

217.    Upon information and belief, Defendants Davidson, Pantel, Haden, Frank and Garcia had

## D. STATEMENT OF CLAIMS

actual or constructive knowledge that MSU's administrators and staff were engaged in illegal conduct that posed a risk of constitutional injury to Plaintiff.

218.     Upon information and belief, Defendants Davidson, Pantel, Haden, Frank and Garcia had authority to address the alleged discrimination and retaliation and to institute corrective measures on MSU's behalf, had actual knowledge of discrimination against Plaintiff, and failed to adequately respond, demonstrating deliberate indifference to the discriminatory/retaliatory conduct as well as Plaintiff's constitutional rights.

**E.     REQUEST FOR RELIEF**
*State the relief you are requesting or what you want the court to do.  If additional space is needed to identify the relief you are requesting, use extra paper to request relief.  Please indicate that additional paper is attached and label the additional pages regarding relief as "E. REQUEST FOR RELIEF."*

**SEE ATTACHMENT "E. REQUEST FOR RELIEF" FOLLOWING THIS PAGE.**

**F.     PLAINTIFF'S SIGNATURE**

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct.  *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

_____
(Plaintiff's Signature)

_____15 March 2020_____
(Date)

(Form Revised December 2017)

5

## E. REQUEST FOR RELIEF

### IV. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### VIOLATION OF FREE SPEECH RIGHTS SECURED BY THE FIRST AMENDMENT
### AND 42 U.S.C. 1983
(Against Davidson, Pantel, Haden, Frank, Traylor and Garcia in their official capacity only)

219.    Plaintiff incorporates by this reference all preceding paragraphs as though fully set forth herein.

220.    "The loss of First Amendment freedoms, for even minimal periods of time, unquestioningly constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976).

221.    As described more fully above, Plaintiff and Traylor exchanged a series of emails around the end of October 2018.

222.    Plaintiff emails constitute constitutionally protected activity.

223.    None of the emails authored by Plaintiff communicated a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals.

224.    In sending his emails, Plaintiff did not have the intent to communicate threatening words nor did he intend for Traylor to believe that he intended to commit any act of unlawful violence.

225.    Whether speech constitutes a "true threat" for purposes of determining whether the speech is protected by the First Amendment is generally a question for the jury to determine. Nielander v. Bd. Of Cnt. Comm'rs, 582 F.3d 1155, 1167-68 (10th Cir. 2009).

226.    Plaintiff's emails did not constitute a "true threat".

227.    Upon information and belief, Traylor communicated to MSU officials that he sensed "discomfort" related to Plaintiff's exchanges.

228.    As a result of Plaintiff's protected speech as set forth in the October 2018 emails. Plaintiff was given an immediate interim suspension from the entire schedule of classes and a disciplinary proceeding was initiated against him. The interim suspension decision was made prior to even interviewing Plaintiff.

229.    As a result, Plaintiff was ultimately suspended from MSU until August 3, 2020. In addition, Plaintiff is not allowed on the Auraria campus and must receive approval in advance and if he

## E. REQUEST FOR RELIEF

were to visit the campus without prior approval, he could be ticketed or arrested for trespassing.

230.    By its terms, the disciplinary letter issued to Plaintiff has been filed with the Student Conduct in the Dean of Students Office and creates a discipline record in the event the university may decide to seek further disciplinary action (in the instance of another incident).

231.    Failure to complete the sanctions indicated in the disciplinary letter will result in a hold being placed on Plaintiff's account.

232.    By its terms, the disciplinary letter also states that failure to complete the sanctions also violates the Student Code of Conduct, namely Article III B.6, "Failure to comply with the directions of University officials."

233.    Defendants' suspension of Plaintiff and restriction of her speech as well as the additional sanctions identified above was in retaliation for Plaintiff's exercise of rights secured by the First Amendment to the United States Constitution and would chill a person of ordinary firmness from continuing to engage in protected speech.

234.    Plaintiff's suspension and additional sanctions was motivated as a response to Plaintiff's exercise of constitutionally protected speech.

235.    Plaintiff's suspension and additional sanctions was not in furtherance of legitimate pedagogical concerns.

236.    Plaintiff's suspension and additional sanctions constitute an ongoing violation of federal law to which Plaintiff is entitled to prospective relief.

237.    Upon information and belief, Defendants Davidson, Pantel, Haden, Frank and Sanchez are continuing to permit an ongoing violation of Plaintiff's rights as described above and have the authority to enforce the disciplinary sanctions against Plaintiff.

238.    Accordingly, Plaintiff seeks prospective relief of an injunction in the form of expungement of her academic record. Johnson v. Western State Colorado University, et. al, 71 F.Supp.3d 1217 (D.Colo. 2014) (request to expunge disciplinary proceeding from record is subject to Ex Parte Young exception to Eleventh Amendment).

## E. REQUEST FOR RELIEF

239.    The Ex Parte Young exception also applies to additional sanctions imposed against Plaintiff. Plaintiff also seeks prospective injunctive relief in the form of lifting the prohibition that he not be present on the Auraria campus under threat of arrest, requiring her to undergo and pay for at her own expense a psychological exam and requiring her to write a paper, immediately reinstating her as a student at MSU and allowing her to complete the psychology class from which he was suspended.

240.    Prospective injunctive relief also includes releasing any hold on Plaintiff's account, lifting the University's additional disciplinary action that if Plaintiff fails to complete the aforementioned sanctions, then Plaintiff will have violated the University's policy for failing to comply with reasonable request from University officials or sworn law enforcement officer acting in performance of their duties and/or failure to identify oneself to these persons when requested to do so.

SECOND CLAIM FOR RELIEF
DISCRIMINATION IN VIOLATION OF THE REHABILITATION ACT
(Against MSU)

241.    Plaintiff incorporates by this reference all preceding paragraphs as though fully set forth herein.

242.    As discussed more fully above, between August 2018 and October 2018 Plaintiff and Traylor exchanged a series of emails and other communications, which constitute protected free speech.

243.    As discussed more fully above, Plaintiff's documented disabilities affects the major bodily functions of the brain and neurological functions. Plaintiff's head injury causes functional disabilities or functional deficits, which affects mental functional ability and causes specific learning disabilities.

244.    Traylor was aware that Plaintiff was disabled and had requested an accommodation.

245.    In addition, upon information and belief, prior to October 2018, Traylor had received at least two communications about Plaintiff's disability and accommodation.

246.    The CARE Report submitted by Traylor indicated that the matter was not urgent and did not indicate that Traylor felt threatened or that Plaintiff made any specific threats or comments related to

**3 of 11**

## E. REQUEST FOR RELIEF

self-harm or harm to others.

247.     Frank knew that Plaintiff had never expressed any threat to harm Traylor and that Traylor had not complained that Plaintiff was threatening im in any manner.

248.     As discussed more fully above, upon information and belief, Frank suspended Plaintiff from the University on an interim basis and/or denied her request to be returned to class.

249.     Curl Traylor and Frank were aware of Plaintiff's disability and aware of his requested accommodation for the Fall 2018 semester.

250.     Upon information and belief, Frank and Haden ultimately made the decision to permanently suspend Plaintiff from MSU in October 2018 through May 2019.

251.     At the time he was suspended Plaintiff had completed the majority of the courses needed to complete his degree requirements and was able to continue with accommodations.

252.     Plaintiff's disability and/or requests for accommodation was a motivating factor in the decision to suspend him on an interim basis as well as the decision to suspend him through May 2019 and impose additional sanctions.

253.     MSU acted intentionally and/or with reckless indifference to Plaintiff's rights.

254.     MSU's acts and omissions were the direct and proximate cause of harm to Plaintiff, including but not limited to: embarrassment, humiliation, emotional distress, pain and suffering, and loss of constitutional rights.

255.     MSU's unlawful actions caused Plaintiff harm entitling him to compensatory damages from MSU and such other relief that the Court deems appropriate.

256.     As a direct and proximate result of the acts and omissions described herein, Plaintiff has suffered and incurred, or may be reasonably expected to suffer or incur, the following damages and other losses, including but not limited to: lost income or employment compensation and fringe benefits due to the delay in completing her education, loss of scholarship, damage to reputation and character, emotional or mental anguish, distress, upset, humiliation, embarrassment, or degradation, pain and suffering; and other consequential, incidental, or related damages as well as statutory interest, and reasonable attorney's fees and costs incurred in connection herewith.

## E. REQUEST FOR RELIEF

### THIRD CLAIM FOR RELIEF

#### RETALIATION IN VIOLATION OF THE REHABILITATION ACT
#### (Against MSU)

257.    Plaintiff incorporates by this reference all preceding paragraphs as though fully set forth herein.

258.    On or about August 24, 2018 Plaintiff hand-delivered a copy of his Accommodation Notification Letter to his professors, including Traylor.

259.    The Accommodation Notification Letter required Plaintiff's professors to accommodate him in test taking.

260.    Plaintiff's request and the Accommodation Notification Letter were "protected activity" within the meaning of the Rehabilitation Act.

261.    As discussed more fully above, on October 22, 2018 Traylor raised concerns with Rasheed about the content of emails between Traylor and Plaintiff.

262.    Those concerns were raised shortly after Curl warned Ms. Traylor about Plaintiff and after Traylor became aware of Plaintiff's disability and protected activity as described above.

263.    In response, Traylor submitted a report indicating that emails from Plaintiff showed a pattern of increased hostility.

264.    Upon information and belief, Traylor's impressions about Plaintiff were based on unfounded stereotypes of disabled persons, particularly those with learning disabilities.

265.    Traylor also falsely stated that Plaintiff called him a "coward".

266.    Traylor's reference to Plaintiff's alleged conduct and behavior was related to Plaintiff's disability.

267.    Frank was also aware and had been informed of Plaintiff's disability and requested accommodation.

268.    When Frank received Traylor's and Garcia's reports, Plaintiff was immediately suspended from attending classes and ultimately suspended from MSU as described above.

269.    Traylor's and Garcia's reports and complaints about Plaintiff as well as his interim

## E. REQUEST FOR RELIEF

suspension in October 2018 and her permanent suspension in November 2018 would chill a person of ordinary firmness from engaging in or continuing to engage in protected activity.

270.    MSU's acts and omissions were the direct and proximate cause of harm to Plaintiff, including but not limited to: embarrassment, humiliation, emotional distress, pain and suffering, and loss of constitutional rights.

271.    MSU's unlawful actions caused Plaintiff harm entitling him to compensatory damages from MSU and such other relief that the Court deems appropriate.

272.    As a direct and proximate result of the acts and omissions described herein, Plaintiff has suffered and incurred, or may be reasonably expected to suffer or incur, the following damages and other losses, including but not limited to: lost income or employment compensation and fringe benefits due to the delay in completing his education, loss of scholarship, damage to reputation and character, emotional or mental anguish, distress, upset, humiliation, embarrassment, or degradation, pain and suffering; and other consequential, incidental, or related damages, as well as statutory interest, and reasonable attorney's fees and costs incurred in connection herewith.

### FOURTH CLAIM FOR RELIEF
### FOURTEENTH AMENDMENT - DUE PROCESS & 42 U.S.C. § 1983
(procedural and Substantive)
(Against Haden, Frank, Traylor and Garcia individually and against Davidson, Pantel, Haden, Frank and Garcia in their official capacity only)

273.    Plaintiff incorporates by this reference all preceding paragraphs as though fully set forth herein.

274.    Plaintiff had a reasonable expectation in his continued and uninterrupted education at MSU.

275.    Plaintiff had a property interest in her continued and uninterrupted education at MSU.

276     As discussed more fully above, MSU's Student Code of Conduct provides students with due process prior to disciplinary actions such as suspensions.

277.    Plaintiff's right to due process is also constitutionally protected.

278.    In addition, Plaintiff's constitutional right to due process was clearly established at the time Plaintiff was suspended and additional sanctions were imposed against him.

## E. REQUEST FOR RELIEF

279.     A constitutional right is clearly established when a Tenth Circuit precedent is on point making the constitutional violation apparent.

280.     The 10th Circuit has recognized that students at public universities have a property interest in their place in the program in which they are enrolled that is entitled to procedural and substantive due process protection under the Constitution. Gossett v. State a/Oklahoma, 245 F.3d 1172 (lOth Cir. 2001).

281.     The disciplinary action imposed against Plaintiff was not academic in nature and the disciplinary decision is entitled to no deference.

282.     As described more fully above, such due process involving disciplinary actions includes, but is not limited to, notice, a hearing, the right to present and examine witnesses and the right to have counsel present.

283.     Plaintiff's due process rights as described above were clearly established in the Fall of 2018.

284.     Plaintiff's presence at MSU did not pose a continuing danger to persons or property or an ongoing threat of disrupting the academic process.

285.     Upon information and belief, in November 2018 Frank made the decision that Plaintiff would receive an interim suspension and/or denied Plaintiff's request that the interim suspension be lifted.

286.     As described more fully above, Plaintiff's interim suspension did not fit within the criteria established by the MSU Code of Conduct or constitutional requirements for denying a student's procedural due process rights.

287.     All named Defendants as stated above, violated Plaintiff's due process rights with regard to the interim suspension as described more fully above.

288.     Upon information and belief Frank and Haden made the ultimate decision to suspend Plaintiff from MSU in November 2018 as described more fully above.

289.     Frank and Haden did so without providing Plaintiff with notice of the specific allegations against her as described more fully above, without the opportunity to present and examine witnesses and without the opportunity to be represented by counsel.

## E. REQUEST FOR RELIEF

290.   Plaintiff was suspended from MSU and additional disciplinary sanctions were imposed without procedural due process of law.

291.   When Frank and Haden imposed discipline against Plaintiff, they intentionally violated Plaintiffs constitutional rights under 42 U.S.C. § 1983 and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

292.   Davidson, Pantel, Haden, Frank and Sancez are charged with enforcing the disciplinary actions and as discussed above, enforcing prospective injunctive relief.

293.   Upon information and belief, Defendants Davidson, Pantel, Haden, Curl and Frank are continuing to permit an ongoing violation of Plaintiff's rights as described above and have the authority to enforce the disciplinary sanctions against Plaintiff.

294.   Accordingly, Plaintiff seeks prospective relief of an injunction in the form of expungement of her academic record. Johnson v. Western State Colorado University, et. al, 71 F.Supp.3d 1217 (D.Colo. 2014) (request to expunge disciplinary proceeding from record is subject to Ex Parte Young exception to Eleventh Amendment).

295.   The Ex Parte Young exception also applies to additional sanctions imposed against Plaintiff. Plaintiff also seeks prospective injunctive relief in the form of lifting the prohibition that he not be present on the Auraria campus under threat of arrest, requiring him to meet with a Conduct Officer and a Case Manager in the Dean of Students Office to develop a plan for support to complete your degree. This could include appropriate utilization of the Access Center, Counseling Center, Health Center, IDP Program, Case Management, and other offices/faculty/staff.

296.   As presented in greater detail above Frank completely dismissed the Plaintiff when communicating with her during the course of the matter.

297.   Plaintiff seeks to be granted such relief to allow Plaintiff to be immediately reinstated as a student at MSU and allowing him to complete the degree program from which he was suspended.

298.   Prospective injunctive relief also includes releasing any hold on Plaintiff's account, lifting the University's additional disciplinary action that Plaintiff complete the aforementioned sanctions.

## E. REQUEST FOR RELIEF

299.    The decision to suspend Plaintiff under the circumstances as described more fully above was arbitrary, capricious, and without rational basis under the circumstances.

300.    Moreover, the decision would shock the conscience of any federal court judge reviewing this issue.

301.    Plaintiff's cry for help in requesting that he be allowed such relief, clearly put the named defendants on notice that Plaintiff was requesting rights guaranteed by the Fourteenth Amendment.

302.    The named defendants' actions also violated Plaintiff's procedural and substantive due process rights.

303.    Plaintiff is entitled to damages to compensate her for the injuries and losses that have resulted or will result from the named defendants' actions as described above.

304.    The individual defendants were acting under color of state law and in the course of their official duties.

305.    The individual defendants' actions were taken in malicious, willful, wanton, reckless indifference to, deliberate indifference to, and/or reckless disregard of Plaintiff's rights as guaranteed by 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

306.    As a result of the individual defendants' conduct, Plaintiff is entitled to compensatory and punitive damages.

307.    Plaintiff seeks prospective injunctive relief only against those defendants named in their official capacity.

308.    As a direct, foreseeable, and proximate result of Defendants' intentional unlawful conduct complained of herein, Plaintiff suffered injuries, damages and other losses, including but not limited to, lost future wages and benefits, damage to reputation, loss of scholarship and emotional distress. These injuries, damages and other losses continue into the present and will continue into the foreseeable future, damage to reputation and character, emotional or mental anguish, distress, upset, humiliation, embarrassment, or degradation, pain and suffering and other consequential, incidental or related damages, as well as statutory interest, and reasonable attorney's fees and costs incurred in connection herewith.

## E. REQUEST FOR RELIEF

WHEREFORE, Plaintiff prays for an award of all relief requested herein and that this Court enter judgment in her favor and award her all relief as allowed by law, including, but not limited to, the following:

a. An injunction seeking prospective relief of expungement of Plaintiff's academic record, lifting the prohibition that Plaintiff not be present on the Auraria campus under threat of arrest, requiring undergo meetings or visits to discuss communication and boundary issues, immediately reinstating him as a student at MSU and allowing him to complete the degree program from which he was suspended and further enroll in additional courses, releasing any hold on Plaintiff's account, lifting the sanction that if Plaintiff fails to complete the aforementioned sanctions, then

Plaintiff will have violated the University's policy for failing to comply with reasonable request from University officials or sworn law enforcement officer acting in performance of their duties and/or failure to identify oneself to these persons when requested to do so;

b. Actual economic damages as established at trial for all claims so applicable;

c. Compensatory damages including, but not limited to, those for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of reputation and other nonpecuniary losses for all claims so applicable;

d. Punitive damages against the individual defendants in an amount sufficient to punish their misconduct and to deter future conduct;

e. Tax penalty offset/enhancement;

f. Pre-judgment and post-judgment interest at the statutory rate;

g. Attorneys' fees, costs and expenses as allowed by law, including but not limited to 42 U.S.C. 1988; and

h. Such further relief as justice requires.

PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE

## E. REQUEST FOR RELIEF

Dated this 24th day of March 2020

Michael Francis Holowecki
1060 Teller Sreet, Apt 302
Lakewood, CO 80214
Phone: (720) 572-0296
E-mail: mholowecki@gmail.com